Henry E. Fisher, Respondent, *v.* Enoch H. Bishop et al., Appellants.

Plaintiff, a farmer about seventy years of age, had become much involved as indorser for his son, who failed in business and absconded. On the day of his flight the son executed to plaintiff a transfer of property to secure him for the liabilities he had incurred; said liabilities exceeded in amount the value of the property transferred. The papers for the transfer were drawn by defendant W., who had been a justice of the peace for many years and was employed largely by the people of the vicinity as legal adviser and conveyancer, and had been frequently so employed by plaintiff. Thereafter through fear, excited by the persistent representations and threats by W. to the effect that the transfer was fraudulent against creditors of the son, and unless plaintiff secured defendants they could and would set aside the transfer, plaintiff was induced to execute to defendant his bond and mortgage to secure an indebtedness of the son, which plaintiff was under no legal or moral obligation to pay or secure. In an action to procure the surrender and cancellation of the securities, *held*, that W. occupied a position confidential toward plaintiff which should, in good faith, have precluded him from taking advantage of his situation; that the circumstances established undue influence within the meaning of the rule which avoids contracts so obtained; and that plaintiff was entitled to the relief sought.

Where a fiduciary relation is shown to exist, the burden is upon the person taking securities or contracts enuring to his benefit, to show that the transaction is just and fair.

The rule is not limited to cases of attorney and client, guardian and ward, trustee and *cestui que trust* or other similar relations, but holds good wherever fiduciary relations exist, and there has been a confidence reposed which invests the person trusted with an advantage, in treating with the person so confiding.

(Argued December 2, 1887; decided January 17, 1888.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made at the April Term, 1885, which modified and affirmed as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term. (Reported below, 36 Hun, 112).

The nature of the action and the material facts are stated in the opinion.

*W. H. Johnson* for appellants. There is not sufficient evidence in the case to sustain the finding that Wattles was the confidential legal adviser of this plaintiff in regard to his transaction with his son. (Story's Eq. Jur., § 308.) The threats which are alleged to have been made by the defendant Wattles, viz.: That he would take legal steps to break up the assignment from E. M. Fisher to the plaintiff, furnish no sufficient reason in law for avoiding the effect of the bond and mortgage. (1 Bouv. 514; Norris [Peak's ed.], 440; 6 Mass. Rep. 506; 2 Hun, 167; 72 N. Y. 311.) It is not duress on the part of a person to insist upon his legal rights. (*McPherson v. Cox*, 86 N. Y. 478; *Miller v. Coates*, 2 Hun, 156; *Knapp v. Hyde*, 60 Barb. 80; *Smith v. Rowley*, 66 id. 502; *Snyder v. Borden*, 58 Ind. 143; *Lester v. Union Mfg. Co.*, 1 Hun, 288; *Lord v. Lindsley*, 18 id. 484.) Neither is it duress to threaten legal proceedings even including arrest and imprisonment. (*Kissoch v. House*, 23 Hun, 35; *M. L. Ins. Co. v. Meeker*, 85 N. Y. 614; *Dunham v. Griswold*, 100 id. 224; 16 Week. Dig. 501.) The plaintiff's complaint should have been dismissed and the judgment appealed from should be reversed for the reason that plaintiff did not restore the consideration or offer to restore the same before commencing this action. (5 Wait's Actions and Defenses, 509; 6 id. 661, 663; 64 Me. 477; 36 Wis. 439; 75 Ill. 205.) The lapse of time between giving the security and bringing the action to set it aside, furnishes strong equitable reasons why the plaintiff should not have the relief prayed for in his complaint. (*Davis v. Fox*, 59 Mo. 125; *Lyon v. Waldo*, 35 Mich. 345; 6 Humph. 241; 20 Ill. 266; 49 N. Y. 623; 61 id. 145; 13 Barb. 641; 21 id. 82; 23 id. 171; 86 N. Y. 79; *Cobb v. Hatfield*, 46 id. 533; *Evens v. Gall*, 17 N. H. 573; *Thayer v. Turner*, 8 Metc. 550; *Fors v. Hildreth*, 10 Allen, 76, 80.)

*William Youmans* for respondent. Wattles had assumed to act as a legal adviser of the plaintiff; he had received from him the same confidence which exists ordinarily between client and counsel, and he, therefore, should be held to the same

accountability for his acts, threats and conduct in respect to the transaction out of which the mortgage and bond arose, that would be required of an attorney. (*Freelove* v. *Cole*, 41 Barb. 313.) The bond and mortgage were executed under duress of mind through fear, and were illegal and void. (*Hays* v. *Rudd*, 30 Hun, 239 ; *Eadie* v. *Slimmon*, 26 N. Y. 9, 12 ; 2 Story's Eq. Jur., § 239.)

RUGER, Ch. J. This is an action in equity to procure the surrender and cancellation of a bond and mortgage alleged to have been procured by duress and undue influence exercised by the defendants upon the plaintiff, to that end.

The proof showed that the plaintiff was a farmer, almost seventy years of age, residing in Sidney, and had become much involved as an indorser for his son, who had recently failed in business, and absconded. On the day of his flight the son had executed to his father a transfer of property for the purpose of securing him, as far as he was able, for the liabilities which his father had incurred on his account. The plaintiff had become much embarrassed by these liabilities, as well as mortified and distressed, by the shame and disgrace which he apprehended from his son's misconduct. The defendant Wattles was also a resident of Sidney, where he had been a justice of the peace for many years, and was largely employed by the people of the vicinity as a legal adviser and conveyancer. He had been frequently employed in that capacity by the plaintiff, and was engaged by him in the transaction wherein the son attempted to secure the plaintiff, and drew the transfer made on that occasion. Three days after the son had absconded, the defendants obtained the bond and mortgage in suit, and the proof shows that it was executed by the plaintiff through fear excited by the representations of Wattles that the transfers from the son to plaintiff were fraudulent against creditors, and that unless the plaintiff secured the defendants they could and would set aside such transfers as fraudulent. These threats were several times repeated during the two or three days occupied by the negotiations between

·defendants and plaintiff, and during which the plaintiff resisted ·all efforts to induce him to give the security demanded. Finally, on the third day his resistance was overcome, and he consented to execute the mortgage. He was under no legal or moral obligation to do so, as his liabilities for his son already exceeded the value of the property received by him as security.

We think the circumstances of the case establish the fact of undue influence within the meaning of the rule which avoids ·contracts and conveyances so obtained. It is said in Pomeroy's Equity Jurisprudence (§ 951) : " Where an antecedent fidu-·ciary relation exists, a court of equity will presume confidence placed and influence exerted ; where there is no such fiduciary relation, the confidence and influence must be proved by satis-·factory extrinsic evidence ; the rules of equity and the reme-·dies which it bestows are exactly the same in each of these two cases. The doctrine of equity concerning undue influ-ence is very broad, and is based upon principles of the highest morality. It reaches every case and grants relief where influ-ence is acquired and abused, or where confidence is reposed and betrayed."

Lord Cranworth in *Smith* v. *Kay* laid down the rule in these words (7 H. L. 771) : " There is no branch of the jurisdiction of the Court of Chancery which it is more ready to exercise than that which protects infants and persons in a situation of depend-·ence, as it were, upon others, from being imposed upon by those upon whom they are so dependent. The familiar cases of the ·influence of a parent over his child, of a guardian over his ward, ·of an attorney over his client are but instances ;" but as said by Lord Eldon in *Gibson* v. *Jeyes* (6 Ves. 266), it is " the great rule applying to trustees, attorneys or any one else." It will be seen that the rule is not limited to cases of attorney and ·client, guardian and ward, trustee and *cestui que trust*, or other similar relations, but it holds good wherever fiduciary relations exist and there has been a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding. (*Freelove* v. *Cole*, 41 Barb. 318 ;

*Ford* v. *Harrington*, 16 N. Y. 285.) When this relation is shown to exist it imposes the burden of . proof upon the person taking securities, or making contracts enuring to his benefit, to show that the transaction is just and fair, and that he has derived no unfair advantage from his fiduciary relation. (*Mason* v. *Ring*, 2 Abb. Pr. [N. S.] 322.) Cases holding that contracts obtained under circumstances which amount to legal constraint only, or threats of doing that which the party threatening had a legal right to do, are not controlling or even important in considering the case made by the proof in this action. One who has by reason of his supposed ability and integrity been employed by another as a confidential adviser to transact the business of obtaining surety from an insolvent debtor, and who draws the transfer of property for that purpose, occupies a confidential position towards his employer, which, in good faith and common honesty, should preclude him from taking advantage of his situation, and using the information thus acquired to the detriment or disadvantage of his employer.

There was no evidence in the case which tended to show that the transfers from the son were in fact tainted with fraud or subject to any suspicion, but the assertion that they were subject to be set aside for that reason, coming from the person in whom the plaintiff had confided, and whom he had reason to suppose competent to determine that question, must have weighed with great force upon the mind of an old man ignorant of legal proceedings and already involved in debts and liabilities almost beyond his capacity to meet. The plaintiff might well have been quite unconscious of any fraud in the transaction, and yet have lent a ready belief to the proposition so often asserted by his confidential adviser, that the transfers were fraudulent and could and would be set aside.

The extent to which the plaintiff confided in the defendant Wattles is clearly shown by the fact that he had frequently employed him in business transactions and that the conveyances which he then threatened to annul and overthrow were drawn

by him, and accepted under his advice and co-operation. It was a gross breach of good faith for a person thus trusted, and who had by conducting the business, vouched for its validity and lawfulness, to turn around for the purpose of gaining a personal advantage, and assert that he had been engaged in an illegal transaction, which he could at his own option annul and destroy.

The case shows that by these means the defendants have obtained security for a large amount, from an old man who was under no legal or moral obligation to give it, and without any consideration to support it except the nominal one of a dollar, and that this was extorted at a time when he was laboring under much distress and anxiety of mind, on account of the trouble that encompassed him. The parties in this case did not meet on equal terms, and the defendants took an unfair advantage of the position in which they had been placed, and of the confidence reposed in them by the plaintiff, to procure from him a valuable security to which they had no legal right.

We think the case is clearly within the rules above laid down, and that the defendants should be required to cancel the obligation obtained. The disposition made by the General Term of the appellants' claim, that the mortgage should be sustained because the plaintiff did not offer to return the consideration of one dollar before suit brought, was correct. (*Allerton* v. *Allerton*, 50 N. Y. 670.) That disposition was a modification of the judgment below by directing a repayment of the one dollar.

The judgment should be affirmed.

All concur.

Judgment affirmed.