### SMITH et al. v. OGILVIE.

*(Supreme Court, Special Term, New York County.    January 11, 1889.)*

1. TRUSTS—WHEN FIDUCIARY RELATION EXISTS.

   Plaintiffs made a contract with defendant, who was engaged in a separate and independent business, by which the latter was allowed to publish and sell certain of plaintiffs' stories upon payment of stipulated royalties. *Held*, that defendant assumed no fiduciary relations to plaintiffs.

2. ACCOUNT STATED—IMPEACHMENT.

   In the absence of actual fraud, where an account, though erroneous, has been rendered and a balance struck, and the parties have settled their differences, and neither within a reasonable time objects, the settlement cannot be impeached.

Action for accounting, brought by Ormond G. Smith *et al.* against John S. Ogilvie.

*Fettretch, Silkman & Seybel,* for plaintiffs.    *A. W. Gleason,* for defendant.

O'BRIEN, J.    This action for an accounting, on the ground of fraud, seeks to set aside three distinct transactions between the parties:    *First.* The receipt for royalties from July 1, 1883, covering books other than those published under the title of "The People's Library." *Second.* The sale of four detective stories. *Third.* The receipt for royalties upon the "People's Library" publications, and for the value of electrotype plates from which they were printed. These transactions now sought to be avoided were to be a complete settlement of the amounts due by the defendant to the plaintiffs under a contract made in September, 1880, by which the plaintiffs allowed the defendant to publish and sell certain of their stories upon payment of certain royalties under conditions expressed in the contract. The statements of the account upon which the settlement was made were furnished by defendant, and were accompanied, as claimed by plaintiffs, by certain representations known to defendant to be false and untrue. Upon the very threshold of this inquiry is presented the crucial question as to whether or not the relation existing between the parties was or was not of a fiduciary nature. The evidence shows that the plaintiffs, at the time the agreement sued upon was made, consisted of Street & Smith, the former of whom, it has also been held, was a partner with the defendant.

Street having died prior to the transactions complained of, the respective counsel unite in suggesting that his relation to the parties has no controlling influence upon the matters in dispute, in which suggestion I am inclined to acquiesce. At the time of the settlement complained of, the plaintiffs, as successors of the old firm of Street & Smith, and Ogilvie, as the successor of the old firm of Ogilvie & Street, were each carrying on a separate and independent business. It is claimed by plaintiffs that, notwithstanding this fact, defendant owed them a duty to make proper returns and payment of royalties under the contract, and that, the relation being of a fiduciary nature, defendant was bound to the highest obligation of good faith, and the burden of showing that the settlement was fair and just is upon him. What constitutes a fiduciary relation is often a subject of doubt and controversy. As stated in *Cowee* v. *Cornell*, 75 N. Y. 100: "The law presumes, in the case of guardian and ward, trustee and *cestui que trust*, attorney and client, and, perhaps, physician and patient, from the relation of the parties itself, that their situation is unequal, * * * and, that relation appearing, itself throws the burden upon the trustee, guardian, or attorney of showing the fairness of his dealings. But, while the doctrine is, without doubt, to be extended to many other relations of trust, confidence, or inequality, the trust and confidence, or the superiority on one side and weakness on the other, must be proved in each of these cases. * * * The question as to parties so situated is a question of fact, dependent upon the circumstances in each case. * * * It may be stated as universally true that fraud vitiates all contracts, but, as a general thing, it is not presumed, but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that, either, on the one side, from superior knowledge of the matter, derived from a fiduciary relation or from overmastering influence, or, on the other, from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary, and well understood." This doctrine, long recognized as the settled law in this state, has been lately reaffirmed in the case of *Fisher* v. *Bishop*, 108 N. Y. 25, 15 N. E. Rep. 331. This rule is well stated in Pomeroy's Equity Jurisprudence, § 951: "Where an antecedent fiduciary relation exists, a court of equity will presume confidence placed and influence exerted; where there is no such fiduciary relation, the confidence and influence must be proved by satisfactory extrinsic evidence."

Whatever the relation, it is concededly not one of those enumerated (*Cowee* v. *Cornell*, 75 N. Y. 100) where the law presumed inequality in the situation of parties, but it is a case where there is no presumption of inequality, either way, from the relation, but the same must be proved. This relation is one connected with and founded upon, or having the quality of, a trust or confidence. After an examination of the cases and the principles underlying the relation, such as existed between the parties here, I fail to see how the defendant can be said to have assumed a fiduciary relation to the plaintiffs under a contract by which he obligated himself, for a privilege granted, to pay certain sums of money. He was not in any sense the agent or partner. He was carrying on an independent business of his own, and under an express contract as debtor to pay certain moneys. If he had put in an account showing money due, the plaintiffs could only sue him and get a money judgment. The burden, therefore, was upon the plaintiffs of proving, by satisfactory extrinsic evidence, the confidence and influence complained of, as they were equally bound to prove affirmatively the fraud alleged. Simply proving the error by statement is not sufficient, but it must be shown that the defendant

knew the statements were false and intended to deceive. The plaintiffs, in my opinion, failed to show that any confidence or trust was imposed, but, on the contrary, it appears that they demanded an account of the moneys due them under the contract, and after consideration, and after consulting a lawyer with reference to the "People's Library," they accepted the account as rendered, and settled the same by receiving the amount agreed on between them. They were dealing at arm's length, and if plaintiffs neglected, by failing to examine the defendant's books, or keeping accounts themselves, to sufficiently inform themselves as against such neglect, the court can grant no relief. It has been repeatedly held that a party to whom an account is rendered must, within a reasonable time, object, or he is bound by it. If he seeks to impeach it for fraud or mistake, the burden is upon him to prove it. *Lockwood* v. *Thorne;* 11 N. Y. 170; *Harley* v. *Bank,* 76 N. Y. 618. The fact that the account rendered, or the settlement made, was more favorable to the defendant than an exact adjustment would have demonstrated, is not sufficient. In the absence of actual fraud, where an account, though erroneous, has been rendered and a balance struck, and the parties have settled their differences, and neither, within a reasonable time, objects, both are bound by it. The parties here, after the statements and settlements complained of, continued for three or four years before bringing this suit to do business together, the defendant from time to time rendering statements and making payments under the same royalty agreement. It therefore seems to me to be too late to allow them, on the slight evidence of fraud presented in this case, to set it aside. As has been well stated in *Kock* v. *Bonitz,* 4 Daly, 120: "When an account is thus stated, it is usually conclusive upon both parties, but not absolutely so, unless there has been mutual compromises which operated as an estoppel *in pais;* but otherwise it is open to impeachment for fraud or mistake, but the affirmation, or burden of showing fraud or a mistake, is on the party impeaching it." "Courts are exceedingly unwilling to open it again, unless there has been fraud, or it is very clear that there has been a mistake." "No practice," says Chief Justice MARSHALL, in *Chappedelaine* v. *Dechenaux,* 4 Cranch, 306, "could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful or by only probable testimony." For these reasons there should be judgment for defendant.