. SMITH v. HOWLETT et al.

(Supreme Court, Appellate Division, Fourth Department. May 7, 1898.)

1. TRUSTS—AUTHORITY OF TRUSTEE.
    A trustee has no power to transfer property from himself as an individual to himself as such trustee.
2. SAME—CONVEYANCE TO BENEFICIARY.
    A transfer by a trustee to his cestui que trust of property belonging to himself, which he represents to be trust property, is fraudulent.
3. SAME—CONTRACT WITH BENEFICIARY.
    A trustee induced his cestui que trust to accept securities in lieu of a sum of money held by him as trustee, equal to the nominal value of the securities, but the securities proved to be worth only 50 cents on the dollar. Held, that the transaction was a constructive fraud, and the trustee was not relieved of the trust by a contract entered into between himself and his cestui que trust at the time of the transfer, absolving him from any responsibility under the trust.
4. RESCISSION OF CONTRACT—TENDER.
    In an action for a rescission of a contract it is sufficient for the plaintiff to offer in his complaint to restore to the defendant what he has received, and, if their rights can be adjusted by the judgment, the rule that one who seeks to rescind a contract on the ground of fraud must place the other party in as good a situation as he was in before the contract is satisfied.
5. TRUSTS—RATIFICATION BY BENEFICIARY.
    Ratification by a cestui que trust of a contract with his trustee can only occur where the cestui que trust had full knowledge of all the facts, and of his legal rights; and the burden of proving that knowledge is on the trustee.

Appeal from special term, Onondaga county.

Action by Daniel D. Smith against Alfred A. Howlett and Ella E. Craig. This action was brought to procure a judgment annulling and setting aside an agreement between the parties dated July 17, 1896, which assumed to terminate a prior trust agreement, and adjudging said trust to be still active, and for other equitable relief. The action was commenced about the 1st of January, 1897. The issues joined in the action came on for trial before a justice of the supreme court. The court made findings of fact, and reached conclusions of law, and directed judgment (47 N. Y. Supp. 1002) in favor of the plaintiff upon the issues in the

action, which judgment was entered, from which the defendants appealed. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

J. L. Cheney, for appellants.

E. C. Wright, for respondent.

WARD, J. The plaintiff is a dentist, and has conducted his business for many years in Syracuse, and he is about 80 years of age. The defendant Howlett is a resident of Syracuse, and has been for many years a banker, real-estate dealer, and engaged in other business transactions, and is a few years younger than the plaintiff. The defendant Ella E. Craig is the plaintiff's daughter. In 1890 the daughter was the owner of some real estate in Syracuse, in which the plaintiff had a life interest. The parties to this action entered into an agreement on the 5th day of April, 1890, providing for a sale of the property, and placing the proceeds thereof in the hands of the defendant Howlett as trustee, and that the trustee should pay over to the plaintiff the annual income from said avails, together with such part of the principal as the daughter, Ella Craig, might designate, so long as the plaintiff should live, and at his death the principal remaining should be paid to the daughter. There came into the hands of Howlett as trustee, under this agreement, the sum of $12,000, the income of which Howlett paid over to Smith, together with $500 of the principal, pursuant to the daughter's directions. Prior to 1889 the defendant Howlett had been the owner of a farm of 320 acres of land situate in the town of Hastings, Oswego county, N. Y. On the 14th of November, 1889, Howlett conveyed said farm to James B. Alvord for $7,000, and received back a mortgage thereon for that amount, and the bond of Alvord and his wife for $14,000, interest at 6 per cent., payable semiannually. Payments had been made upon the said bond and mortgage reducing them to $5,500. Howlett continued to own these securities during the period of the trust, and until he sought to turn them over to the plaintiff under a new agreement between the parties, entered into the 7th day of July, 1896. That agreement recited, among other things, that there was unpaid upon this bond and mortgage the sum of $5,500 "and certain interest, and which is now held by the said Howlett as a part of the said trust fund." These securities, it was provided, should be transferred to the plaintiff as his share of the trust fund, being $5,500; and the remaining portion of the fund, being $6,000, after deducting certain commissions and expenses, should be paid to the daughter, and Howlett should be relieved from all claim growing out of the former trust agreement, and from any "matter, cause, or thing whatsoever from the beginning of the world to the day of these presents, and more especially from any liability arising out of the said agreement of April 5, 1890, and the acts of the said Howlett thereunder or by reason thereof." This action was instituted to set aside said agreement upon the ground of fraud, actual or constructive.

Upon the trial the plaintiff testified, in substance, that there had been some default in the payment of interest upon these securities prior to the execution of the last agreement; that the defendant Howlett represented to him that the property upon which the mortgage was a lien was worth $8,000 or $10,000; that the property was good security for the bond and mortgage; that he was induced to take these securities in lieu of his claim upon the trust estate by these representations; and, in effect, that he relied upon them as to the value of the property. The defendant denied that he made these statements, but admitted that since he had taken the mortgage the farm had depreciated considerably in value, and that about the time he was negotiating with the plaintiff to take these securities he had been pressed for money by reason of losses he had sustained in railroad and other operations. The plaintiff admitted that he had been twice out to look at the farm, but under circumstances that gave him but little information as to its value; and that he was ignorant of the value of such properties, and relied upon what Howlett had told him in regard to it. From Howlett's own statement it appears that he gave the plaintiff but little information in regard to this property. There was not that full and fair disclosure of all the facts in regard to the value and situation of the property mortgaged and to the responsibility of the parties executing the bond which it was his duty, as trustee, to have given to the plaintiff; and as a matter of fact the security was not worth but about 50 cents on a dollar, and the parties to the bond were insolvent at the time of the execution of the agreement terminating the trust. Another circumstance of much weight appears uncontradicted in the case, and is found by the trial court, which is that at some time before the execution of the last agreement (Howlett was not able to say when), Howlett, as an individual, transferred to himself as trustee the said bond and mortgage, and assumed to hold it as trustee, as appears by the instrument discharging the trust; and this was done without the knowledge or consent of the plaintiff. That this transfer was made as one of the expedients to induce the cestui que trust to take these securities appears quite probable. The evidence of the witness Alonzo T. Smith, a brother of the plaintiff, who testified that Howlett, in the summer of 1896, told the witness that he did not know what to do with the plaintiff's money; did not know where to place it at 6 per cent. interest; that in another conversation held afterwards, Howlett told the witness that he had placed the plaintiff's money on a good 6 per cent. bond and mortgage on a farm,—tends in the same direction. Howlett, at the time of the execution of the last agreement, appeared not in the attitude of transferring his own property to the plaintiff, but of transferring property which already belonged to the plaintiff and his daughter. Here was the suppression of an important fact in violation of the duty of Howlett as trustee. He had no power to transfer the bond and mortgage from himself as an individual to himself as trustee, and his transferring them as trust property was fraudulent.

The trial court found that the plaintiff collected nothing upon the

bond and mortgage except the sum of $50 in October, 1896; that in that month the plaintiff instituted a suit for the foreclosure of the bond and mortgage; the foreclosure proceeded to a sale; that Howlett was present at the sale, and bid up the farm to $2,550, but it was struck off to the plaintiff, the highest bidder, for $2,600; that there was a deficiency judgment thereon of $3,300; that the farm, at the time of the transfer of the bond and mortgage to the plaintiff, was wholly inadequate security for the $5,500, and the bond was of no value, and the Alvords were insolvent; that the plaintiff was deceived as to the value of the farm and as to the said bond and mortgage in believing that the same was ample security for the $5,500; that the plaintiff did not intend to, and did not, ratify the transfer of the bond and mortgage to him in satisfaction of the $5,500. These findings are sustained by the evidence, and the trial court found as a conclusion of law that so much of the agreement of July 7, 1896, as transferred the bond and mortgage to the plaintiff should be annulled and vacated, and, instead thereof, Howlett should pay the plaintiff the sum of $5,500 and the interest from October 10, 1895, the date of the last payment of interest, less the sum of $50, the money collected on the mortgage before the foreclosure; and that the plaintiff assign and surrender to Howlett by quitclaim deed the premises described in the mortgage, and assign and surrender to him the judgment taken on the foreclosure; and, on the tender of such assignment and deed, that the plaintiff have judgment for $5,500 and interest, less the sum of $50 paid thereon, with costs. There is no evidence to indicate, prior to the commencement of the foreclosure suit, that the plaintiff had acquired any satisfactory knowledge of the value of the real estate, or whether he could realize the amount of securities upon the sale of the property. However, on the 27th of November, before the sale, the plaintiff caused his attorney to write to the defendant a letter, of the substantial part of which the following is a copy:

"As the time approaches for the sale of the Alvord property in Oswego county, we have become more and more convinced that the property will not sell for nearly the amount of the mortgage. The latest statement that we have had from there is that the property is not worth over fifteen hundred dollars, and from all I can learn the bond of Mr. Alvord is worthless. The doctor [the plaintiff] wishes me to say to you that he took this bond and mortgage entirely on your statements as to the value of the property and of the bond, and as you were holding this money as trustee it seems to me very probable that you will be held responsible for the result of any statements made by you at the time of the transfer. We are willing to make any arrangement that you may desire with reference to the sale, but the doctor will certainly hold you responsible in case the property should not sell for a larger sum than stated above, and he will undoubtedly hold you responsible for any deficiency that may occur by reason of his having taken the mortgage instead of the money which you held as trustee."

Upon the trial of the action the plaintiff tendered to the defendant Howlett an assignment of the bond and mortgage and a deed of the premises covered thereby, and offered to restore what he had received in the transaction, which was refused by Howlett. Before the sale the attorney for the plaintiff stated to Howlett that he was satisfied that the property would not sell for anything like the amount of the mortgage, and he tendered him the decree of

foreclosure and the mortgage bond and all papers pertaining to the matter, and demanded the amount of the fund represented by the mortgage. Howlett said he had nothing to do with it. A similar offer was made after the sale, which was declined. The complaint alleges this fact, and the offer to transfer to Howlett the premises covered by the sale, and all benefits and advantages thereunder, so that the defendant Howlett could be placed in as good a condition as he was before he executed the agreement of July 7, 1896.

The learned counsel for the appellants insists that the judgment should be reversed for two reasons: First, that the plaintiff should not be permitted to rescind the contract discharging the trust on the ground of fraud, because he had not moved in that direction immediately upon discovering the fraud; and, second, that he ratified the transaction by retaining the bond and mortgage, and attempting its collection; and he cites authorities in support of these positions, which, when examined, afford us but little assistance in disposing of the questions arising upon this review. They are cases of actions at law, where the parties stood upon equal grounds in making the contract or entering into the transaction that was claimed to have been fraudulent. They are not cases which belong to the category of the case at bar, where trust relations existed, and where the trustee has been guilty of fraud, either actual or constructive, as against the cestui que trust. "At law, fraud must be proved, but in equity there are certain rules prohibiting parties bearing certain relations to each other from contracting between themselves; and, if parties bearing such relations enter into contract with each other, courts of equity presume them to be fraudulent, and convert the fraudulent party into a trustee; and herein courts of equity go further than courts of law, and presume fraud in cases where courts of law would require it to be proved,—that is, if parties within the prohibited relations or conditions contract between themselves, courts of equity will avoid the contract altogether without proof, or they will throw upon the party standing in this position of trust, confidence, and influence the burden of proving the entire fairness of the transaction. * * * Thus, if a trustee buys property of his cestui que trust, * * * equity will either avoid the contract altogether without proof, or will throw the burden of proving the fairness of the transaction upon the purchaser; and, if the proof fails, the contract will be avoided, or the purchaser will be construed to be a trustee, at the election of the other party. The ground of this rule is that the danger of allowing persons holding such relations of trust and influence with others to deal with them is so great that the presumption ought to be against the transaction, and the person holding the trust or influence ought to be required to vindicate it from all fraud, or to continue to hold the property in trust for the benefit of the cestui que trust." Perry, Trusts, § 194, note 1, and also section 195. The same view is enforced in 2 Pom. Eq. Jur. § 956; Will. Eq. Jur. p. 172; Fisher v. Bishop, 108 N. Y. 25, 15 N. E. 331; Mason v. Ring, 2 Abb. Prac. (N. S.) 322; Brooks v. Martin, 2 Wall. 70. And in relation to the duty of the trustee in such a case to

make full disclosure of facts the author first quoted, in section 178, says: "It is not enough that they do not affirmatively misrepresent. They must not conceal. They must speak, and speak fully to every material fact known to them, or the contract will not be allowed to stand." Citing cases in note 4. Judged by these equitable standards, the defendant Howlett falls far short of presenting a case upon the evidence in the record before us that will justify him in realizing $5,500 out of securities worth not half that amount, under the circumstances of this case. It is not necessary to charge him with actual fraud in this action to sustain the result reached by the trial court. Under well-settled rules of equity jurisprudence, constructive fraud exists, and the trustee was not discharged by the contract of July 7, 1896. The trust still continued. The trustee, before being relieved of his trust, must do exact justice to the cestui que trust; and until that is done the trust continues, and courts of equity will enforce the trust, no matter what form of writing or contract the trustee has induced the cestui que trust to enter into which absolves the trustee.

The remaining question is whether the plaintiff has so far ratified the contract discharging the trust as to preclude him from the relief sought in this action. There is no doubt of the power of the court, in the absence of ratification, to grant the relief provided for in the judgment appealed from. This action does not proceed upon a rescission of the contract, but proceeds for a rescission. In such a case it is sufficient for the plaintiff to offer in his complaint to restore to the defendant what he has received, and the rights of the parties can be fully regulated and protected in the judgment to be entered. Gould v. Bank, 86 N. Y. 83; Allerton v. Allerton, 50 N. Y. 670. The rule that he who seeks to rescind an agreement upon the ground of fraud must place the other party in as good situation as that in which he was when the agreement was made is satisfied if the judgment asked for will accomplish that result, and in such a case no offer to return that which was received is necessary. Allerton v. Allerton, supra; and see Fisher v. Bishop, 108 N. Y. 25, 15 N. E. 331. It is in the power of the plaintiff to restore to the defendant Howlett everything which he parted with, in effect, under the agreement discharging the trust; and that the judgment provides for. Ratification can only occur where the party claimed to have ratified had full knowledge of the facts and of his legal rights, in case it is sought to apply the doctrine as between trustees and a cestui que trust. The rule in such cases is stated in Adair v. Brimmer, 74 N. Y. 554:

"The cestui que trust must * * * not only have been acquainted with the facts, but apprised of the law how these facts would be dealt with by a court of equity. All that is implied in the act of ratification when set up in equity by a trustee against his cestui que trust must be proved, and will not be assumed. The maxim, 'Ignorantia legis excusat neminem,' cannot be invoked in such a case. The cestui que trust must be shown to have been apprised of his legal rights,"—citing cases.

The plaintiff found these securities put upon him through the fraud of the defendant Howlett, and he did not owe to him the duty of superior vigilance in discovering the fraud, or of relieving How-

lett from its consequences. That he was not fully apprised of the facts, and that he did not intend in any manner to ratify the transaction with full knowledge of such facts and of his legal rights, is apparent from the record. Before the sale under the foreclosure, he apprised Howlett that, while he might proceed with the sale to ascertain the full value of the property, he should hold him responsible for any deficiency. We concur with the trial court that there was not such a ratification as bars the plaintiff from relief in this action.

The judgment appealed from should be affirmed, with costs. All concur except HARDIN, P. J., not voting.