Matter of the Transfer Tax on the Estate of Mary A. Early, Deceased.

(Surrogate's Court, New York County, May, 1920.)

Transfer tax — what proper deductions — trusts — wills — evidence — executors and administrators — Code Civ. Pro. § 2664-a.

The rule of law that a trustee should not invest fiduciary funds in his own name and that he should not mingle trust funds with his own or those of another trust, are strengthened by section 2664-a of the Code of Civil Procedure making such acts criminal.

Where in a transfer tax proceeding the proof does not show that real estate held by decedent at her death in her own name was purchased with trust funds of the estate of her deceased husband, of which she was the sole trustee, such real estate will not be presumed to be held in trust for the legatees under the will of the husband.

When decedent took over her husband's estate in 1891 she was possessed not only of a large amount of cash but had a separate income from certain real estate of which she was the owner. The surplus income of her share in her husband's estate and other funds went with any moneys that might have been

used from the trust estate into the properties held by her at her death in 1917. She was singularly successful in her business operations and died intestate survived by two sons and a daughter, her only heirs at law and next of kin. Upon an application to exempt from a transfer tax, the property of which she died seized and possessed, *held,* that while as executrix she was liable for the principal of the estate of her deceased husband, she was not liable for the profits realized on investments of $80,000 of trust funds in the real estate purchased in her own name, and that the amount of any debt due from her estate to the estate of her deceased husband and to the legatees under his will, is a proper deduction herein.

APPLICATION to exempt from a transfer tax the property of which decedent died seized and possessed.

Charles M. Early, for Charles M. Early.

Frederick S. Rauber, for Agnes C. Early.

Lafayette B. Gleason (Schuyler C. Carlton, of counsel), for state comptroller.

FOLEY, S. This is an application to exempt from a transfer tax the property of which the decedent died seized and possessed.

In this particular case the important question to be decided is whether all or any part of the profits of $125,000 alleged to have been realized on the investment of trust funds in real estate purchased in her own name by the trustee belong to her legal representatives or are the property of the beneficiaries of the trust. The trust moneys diverted amounted originally to about $80,000. It is the query propounded, but not decided, by the Court of Appeals in *Holmes* v. *Gilman,* 138 N. Y. 369, 385, as to the respective rights of the parties, where the funds are mingled, if the estate left by the fiduciary exceeds the trust fund indebtedness.

Surrogate's Court, New York County, May, 1920. [Vol. 112.

Mary Early died intestate on the 23d of December, 1917. She was survived by two sons and a daughter, her only heirs at law and next of kin. Letters of administration upon her estate were granted by this court to her sons. Upon the application of Charles M. Early, one of the administrators, an order designating an appraiser to appraise her estate under the Transfer Tax Law was made by this court. Subsequently the appraiser filed his report showing that the decedent died seized of certain real estate which he reported as subject to a tax.

Upon an appeal by the administrator from the order entered upon this report an order was made by my learned predecessor, Surrogate Fowler (107 Misc. Rep. 425), remitting the proceeding to the appraiser for the purpose of taking testimony in relation to the claim of the administrator (1) that certain real property of which the decedent died seized was purchased with funds of the estate of John Early, deceased; (2) that the decedent was indebted to the beneficiaries under the last will of John Early in the sum of $326,-954.52; (3) that the decedent was indebted to Charles M. Early and Agnes C. Early in the sum of $32,175.

In accordance with the provisions of that order additional affidavits were submitted to the appraiser and testimony taken before him. The affidavits and testimony were filed in this court as the appraiser's supplemental report. From such affidavits it appears that John Early, the husband of the decedent, died on March 23, 1891, and was survived by his widow and three children. The children were then seventeen, sixteen and twelve years of age, respectively. He gave one-third of his residuary estate to his executors and trustees in trust to pay the income to his wife during her life, and upon her death to pay the principal to his childen. He directed his executors to

divide the remaining two-thirds into as many shares as he left children, to hold one of the shares for each of his children and to pay the income from such share to the support and education of each child until he or she arrived at the age of twenty-five years, when the principal was to be paid over to such child.

The decedent qualified as executrix and trustee under the will of her husband and proceeded to administer the estate. In September, 1892, she filed an inventory in this court showing that she had realized from the sale of the business conducted by him at the time of his death the sum of $50,000 and that she had merchandise on hand of the value of $4,365.34. There were certain outstanding accounts, however, and I have accepted the amount collected by her, as stated by her administrator, $27,984.08. At the time of his death John Early also had a leasehold interest in the premises No. 127 Reade street and was seized of the following real estate: Nos. 1761 to 1767 Park avenue and No. 54 West Forty-sixth street.

The decedent, as executrix and trustee of the estate of John Early, never filed an account. Abortive proceedings to compel her to do so were begun in 1910 and 1914, but no account was filed, evidently because the mother and children had agreed to a discontinuance of the proceedings. In 1917 an action was brought in the Supreme Court by Joseph Early to compel her to account, but she died while the action was pending, and it was discontinued subsequent to the order of Surrogate Fowler directing the taking of further testimony.

In 1894 she purchased in her own name the premises No. 582 Seventh avenue and paid in cash as part of the purchase price the sum of $21,880.49. Thereafter, until 1916, she purchased in her own name several parcels of real estate, principally in the city of

New York, the net market value of which at her death was $221,284.71.

The administrators contend that this real estate was purchased in part or wholly with the trust funds of the estate of John Early and that no transfer tax is due. The proof submitted to the appraiser, however, does not show that the decedent used the funds of the estate of John Early for the purchase of any of the parcels of real estate. The affidavit of Charles M. Early, one of the administrators, verified the 29th day of July, 1919, and submitted to the appraiser upon the supplemental hearing, alleges that the decedent shortly after the death of John Early opened an account under the name of the Estate of John Early with the New York National Exchange Bank; that she continued to use the account for the estate until September, 1892, when she opened an account in her individual name in the Fifth Avenue Bank of New York city, and that " from and after September, 1892, all funds received and paid for the account of the John Early estate passed through her individual account in the Fifth Avenue Bank." In the schedules attached to the affidavit submitted by this administrator it appears that the payment for the first piece of real estate purchased by her in 1894 was made from funds in the United States Trust Company, and that payments for the parcels subsequently purchased by her were made either from funds in that trust company, or from the proceeds of mortgages on real estate already held by her, or the proceeds of sale of such real estate. The papers constituting the appraiser's original and supplemental reports do not contain any allegation or proof that the funds to her individual credit in the United States Trust Company belonged to the estate of John Early.

In order to follow money into lands and impress the latter with a trust, the money must be distinctly traced

and clearly proved to have been invested in the land. There must be a direct and unbroken connection between the two.   The funds must be "ascertained, traced and identified."   There is no presumption that a trust fund in the hands of a fiduciary for many years and undisposed of at death is part of his estate. *Ferris* v. *Van Vechten,* 73 N. Y. 113; *Cavin* v. *Gleason,* 105 id. 256; *Matter of Hicks,* 170 id. 195, 198; *Rastetter* v. *Hoeninger,* 214 id. 66, 74; *Jaffe* v. *Weld,* 155 App. Div. 110.   As the administrator has not proved that the real estate held by the decedent was purchased with funds of the estate of John Early, deceased, such real estate will not be presumed to be held in trust for the legatees under the will of John Early.   Indeed the administrator does not claim all the property as belonging to the John Early estate, but he has elected to treat the amount due the estate of John Early as a debt by setting forth the amount alleged to be due in his affidavit and transfer tax schedules (Schedule B 3).

The debt due from the estate of Mary Early to the estate of John Early and to the latter's legatees under his will is a proper deduction herein.   *Matter of Wheeler,* 115 App. Div. 616; *Matter of Westurn,* 152 N. Y. 93.

An examination of the account filed reveals that only about $80,000 worth of real estate had been purchased by the executrix between 1891 and 1904, when the trust terminated.   During the following thirteen years, until her death, the further sum of $125,000 was invested in property by her.   Charles Early became twenty-one in 1896, his brother in 1895 and his sister in 1900.   The beneficiaries lived with their mother — Charles and his sister lived with her up to the time of her death.   They knew of the various investments, and although the latter might have been illegal and contrary to the will of their father, the knowledge of the

children, and particularly the accurate knowledge of Charles Early, as revealed by his testimony, and the fact that he has been an attorney-at-law since 1899, convince me that they were fully aware of the way their mother handled the estate, and are responsible for the result. *Ungrich* v. *Ungrich,* 131 App. Div. 24, 29. Charles Early, in one of his letters in the record, said: " For many years I have assisted my mother in the management of her affairs." The children had helped in obtaining money to finance part of these transactions, they permitted her to collect the rents, and they are, therefore, bound by her acts and conduct. In this case there was an acquiescence by the children of at least thirteen years, and in the case of Charles Early of twenty-one years after coming of age. From long silence " there is a presumption of fair dealing which overrides any presumption of wrongdoing growing out of the trust relations of the party." *Geyer* v. *Snyder,* 140 N. Y. 394, 402; *Barry* v. *Lambert,* 98 id. 300. See, also, the excellent opinion of Ketcham, S., in *Matter of Union Trust Company,* 86 Misc. Rep. 394; affd., 219 N. Y. 514.

It is the law that a trustee shall not invest fiduciary funds in his own name and that he shall not mingle the funds of a trust with his own or the funds of another trust. These rules have been strengthened by the recent enactment of section 2664-a of the Code of Civil Procedure, making such acts criminal. *Anderson* v. *Fry,* 123 App. Div. 46, 60; affd., 194 N. Y. 515; *Shiverick* v. *Bonsall,* 185 App. Div. 338. Mrs. Early's conduct as trustee in doing so was improper and illegal, but she seems to have acted with good intentions, and for the welfare of her family. Mrs. Early admittedly possessed a large amount of cash in 1891 when she took over her husband's estate. Mrs. Early also had a separate income from certain property

Misc.]   Surrogate's Court, New York County, May, 1920.

owned by her personally in Fifteenth street and admitted by Charles Early not to be part of his father's estate. It is stated by him that the amount of rents collected by her from this property alone amounted to $9,436.46.

The surplus income of Mrs. Early from her share of John Early's estate, and her other funds, went with any moneys that might have been used from the trust estate into the properties held by her at the time of her death. She was a thrifty woman and singularly successful in her business operations. She made no will in favor of strangers, but permitted all the property to pass in equal shares to her children. If it were not for the transfer tax to be collected, the issues here would be academic, as the creditors of Mary Early, the legatees of John Early, and the heirs and next of kin of Mary Early are the same persons, and all the property of both estates is now vested in them.

In view of the facts stated, I have adopted the rule here that Mary Early, as executrix, was liable for the principal of her husband's estate, and not for the profits arising from her real estate operations. In *Holmes* v. *Gilman,* 138 N. Y. 369, 378, 379, the court said: "Where moneys have been misapplied and have been used as a portion of a larger amount which has been invested in other property, the property thus acquired does not as a whole belong to the owner of the moneys misapplied. It does not belong to him because it has *not* been purchased or acquired wholly with his moneys or funds, and hence it is that such property is held charged with a lien at least to the amount of the trust funds invested in it." "If money to which one person is legally or equitably entitled is wrongfully mingled by another with money of his own, so that the whole forms one indistinguishable mass, two courses are open to him who is wronged: (1) He may assert an

equitable lien on the entire fund for the amount of his money, or (2) he may claim that the delinquent is holding for him * * * a portion of the commingled fund proportioned to his contribution thereto." *Madison Trust Co.* v. *Carnegie Trust Co.,* 167 App. Div. 21. In *Bushe* v. *Wright,* 118 App. Div. 320, 328, Laughlin, J., the court said: " He at most had a claim for an accounting, with possibly the right to have part of the amount found due declared a lien on the lands purchased by the deceased executor in his own *name individually* with trust funds."

This court must therefore separate her personal estate, upon which a tax is justly due the state, from the amount due her husband's estate. The financial statement of the indebtedness filed is not in the form required for an account by the Code or by the practice of this court. Detailed items of receipts and disbursements are not given, and because of the fact that the previous order did not require the appraiser to report his findings, the burden of analyzing the accounts, covering a period of twenty-six years, and making conclusions has been placed upon the court. The administristrators might properly be directed to file an account of the acts and conduct of Mary Early in form capable of judicial settlement. Code Civ. Pro. § 2510, subd. 3; Id. § 2721.

I have decided, however, in order to save the expense of an accounting to the estate and to terminate this long litigation, to accept the informal account filed by the administrator in the transfer tax proceeding. It recites that the principal to be accounted for is $136,349.45. I have allowed as correct the amount of her inventory $54,365.34, and additional assets received by Mrs. Early, $27,984.08. From this amount I have disallowed the sum of $10,000 — realized in 1905 upon mortgage on Nos. 582–584 Seventh avenue

— and the further sum of $43,000 realized in 1911 from the proceeds of the mortgage on property Nos. 200–202 West Thirty-ninth street. These items, really profits, are not proper surcharges because the properties, as shown elsewhere in this opinion, are not deemed to be the properties of the estate of John Early, and the theory adopted by the court is that the principal of the trust fund and interest are to be allowed as a claim against the estate. In this case, however, the income far exceeded legal interest on the corpus of the estate. *Price* v. *Holman*, 135 N. Y. 124, 133; *Ungrich* v. *Ungrich, supra; English* v. *McIntyre*, 29 App. Div. 439, 447. The elimination of these items reduces the principal of the estate with which Mrs. Early was chargeable to $83,349.45.

In the same exhibit the revised net income of the estate from 1891 to 1917 is stated to be $332,034.05. This amount is excessive. There should be deducted the charge against Mrs. Early for reasonable value of the rental of the premises No. 54 West Forty-sixth street at the rate of $2,800 per year, or approximately $74,900. This parcel had been the home of John Early and his family, and after his death was occupied by his widow and her children. His will gave the household furniture to her. Charles Early resided there from 1891 up to the time of his mother's death. When he reached the age of twenty-five, in the year 1900, he became entitled under the will of his father to a two-ninths interest in all the property. His sister and brother likewise became entitled to the same share upon arriving at that age. Under the Real Property Law (§ 101) a two-thirds interest in the home and the other real estate left by the father vested in fee in the children at that time. The authority of the executrix to collect rents and income for them was terminated therefore in 1904, when the youngest child reached

twenty-five. *Manice* v. *Manice*, 43 N. Y. 303, 362; *Matter of Murray*, 124 App. Div. 548. Thereafter the children became tenants in common and the mother is not accountable as executrix for rent. *Fogarty* v. *Stange*, 72 Misc. Rep. 225. The item of rental of the home which the children occupied with their mother would not be allowed as a debit upon a proper accounting and must be disallowed here.

Charles Early has credited his mother with board for himself and the other children at the rate of $10 a week during portion of the time, and $12 a week for the remainder. Such items are wholly approximations. I have decided, however, not to disturb these amounts credited to Mrs. Early, although I have no doubt that they are very inadequate and do not represent a fair share of the expenses of maintaining the household. The disallowance of this item from the charges against decedent necessitates a revision of income paid or credited to the legatees under the will of John Early by deducting their share — two-thirds of $74,900, or approximately $49,933.33 from $90,291.46 (the amount stated in the account)— which makes the corrected revised net income due from Mary Early to the estate of John Early $40,358.13.

The item " additions to capital " in the sheet described as " revised summary statement," amounting to $27,500 for the years 1892, 1893 and 1894, is an approximation only by Charles Early, without supporting evidence in the books or accounts of the decedent, and may be also a duplication of a similar item already allowed in the capital account. This item is disallowed. The item of $14,208.91, under " surcharges," described as " loss of income, 200–202 West Thirty-ninth street," is also disallowed as improper. The item " depreciation in cost, 200–202 West Thirty-ninth street," amounting to $45,275, is also disallowed. This

property was purchased in 1911 with the knowledge of Charles Early, and the other children and he attended the closing of title. *Ungrich* v. *Ungrich,* 131 App. Div. 24; 141 id. 485; affd., 207 N. Y. 662. I have already pointed out that the rule applied by the court is that the principal of the trust and the balance of income are the test of liability. Any losses or profits are not to be considered. The items of interest under the heading " surcharges " amounting to $2,170 are allowed.

No credit has been given Mrs. Early by her son for commissions for acting as executrix of John Early. On the administrator's own statement these commissions would amount to $9,000. I have, however, disregarded this item.

The additional claim of $30,000 made by Charles Early for mortgage on premises No. 54 West Forty-sixth street is disallowed as having already been allowed in the capital account. With the elimination of the items disallowed by me the summary statement of indebtedness of Mary Early's estate to John Early's estate would be as follows:

| | | |
|---|---:|---:|
| Principal. . . . . . . . . . . . . . . . . . . . . . . . . . . . | $83,349 | 45 |
| Income. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 40,358 | 13 |
| Interest (items allowed) . . . . . . . . . . . . . . . | 2,170 | 00 |
| Total due estate of John Early . . . . . . . | $125,877 | 58 |
| The net amount of the estate of Mary Early was valued by the appraiser at . . . | 234,250 | 05 |
| The net amount subject to tax, transferred to the heirs and distributees of Mary Early therefore would be the difference, approximately . . . . . . . . . . . . . . | $108,372 | 47 |

The amount of indebtedness allowed as a deduction is fair to both the state and the beneficiaries, for it exceeds the equities in 1916 (before the reduction of the mortgages) of the parcels covered by Mrs. Early's own declaration of trust made in writing at that time.

The proceedings will be remitted to the appraiser for the purpose of revising his report in accordance with this opinion.

Decreed accordingly.