In the Matter of the Accounting of EDGAR F. LUCKENBACH, as Trustee under the Will of LEWIS LUCKENBACH, Deceased.

WILLIAM R. CONKLIN, as General Guardian of EDGAR F. LUCKENBACH, JR., et al., Appellants; ANDREA L. DOBBS et al., Respondents. (Appeal No. 1.)

Second Department, December 29, 1943.

*Robert W. Owens, Jr.* (*William R. Conklin* with him on the brief), for appellant William R. Conklin, as general guardian, et cetera.

*Roscoe H. Hupper* for appellant Roscoe H. Hupper, as executor of Edgar F. Luckenbach, deceased trustee.

*William T. Griffin* and *Joseph V. McKee* for respondent Andrea L. Dobbs.

*John A. Wilson* (*Joseph W. Drake* and *George C. Seward* with him on the brief), for respondents Lewis Luckenbach and Phillip Barnett.

*John P. McGrath* and *Edwin M. Bourke* for respondent Frank J. Taylor, as successor trustee.

ADEL, J. Lewis Luckenbach, deceased (hereinafter referred to as " grandfather "), by his will appointed Edgar F. Luckenbach (hereinafter referred to as " father ") trustee of certain property. The father served as trustee from 1908 until his death on April 26, 1943, following which, by the decree under review, the Surrogate appointed a successor trustee.

The appellants (the father's executor and one of the remaindermen) challenge the appointment on the grounds of lack of

power and lack of necessity, contending that the trust terminated or became " fully executed " upon the death of the father.

The grandfather was in the marine transportation business. He used a number of vessels and barges which, by his will probated in 1906, he directed be placed in trust, with the father and a trust company operating them as trustees. He directed that out of the income there be paid (a) $15,000 annually to his widow during her life; (b) the balance of the income to the father, and (c) after the widow's death, the entire income to the father during his life. He further directed that upon the death of the father the principal be divided among the father's children in equal proportions.

The trust company named as cotrustee renounced in 1908, so that the father was the sole trustee from 1908 to 1943, when he died. It is not questioned that the widow received her annual income until her death in 1929. And it is not questioned that during her lifetime the father was entitled to all income over $15,000 annually, and the entire income after her death. The trust, so far as the payment of income to life beneficiaries was concerned, terminated upon the father's death, and all that remained was for the father's legal representative to divide the principal into three parts and deliver them to the remaindermen.

During all the years when the father conducted a marine business or businesses, he commingled the assets of the trust with his personal property. When the trust was created in 1908 the trustee was charged with property of the value of $380,147.47. When the father died in 1943, his estate and the trust property were of the value, it is claimed, of about $22,000,000. While the father was alive a controversy arose as to how much of the property in his hands represented trust funds. In 1941 he was required to account, and he then asserted that the trust corpus was of the value of about $2,229,000. He had never filed an account in the period between 1908 and 1941. Objections were filed to his account and, after hearings, a report of a referee was filed in December, 1941. Motions to confirm and to reject the report were undecided at the time of the father's death in 1943.

Under the will of the grandfather, the trustees were given full power to sell, to invest and to reinvest. The will contained a provision that gave great freedom of action to the father, reading as follows: " Sixth, I hereby authorize and empower my Executors and Trustees to separate as far as practical, all my real and personal estate from the barges, boats and

steamers and other floating property I may have at the time of my death, and use in my business of transportation, freight, wrecking and towing, and to carry on and conduct said business during the lifetime of my said son or as long after my death as he may desire to continue in said business, provided, however, the said business shall be transacted at a profit. If said business should prove unprofitable or for any other reason they may desire to discontinue said business, they shall dispose of the good will of said business and all of said floating stock at such prices and under such conditions as they may deem best. It is my wish that during the continuance of said business, my said son shall take the active superintendence of said business, and if at any time, and for any reason my said son shall be unable to give his personal superintendence, then, to sell and dispose of said business, good will, boats and appliances as aforesaid.''

The boats which became the main corpus of the trust estate were not wholly owned by the grandfather. His interest in them was about sixty-three per cent, and the balance was owned by the grandfather's brother and the father. After the trust took effect the father bought out his uncle, so that thereafter the father owned the entire interest in the vessels and the business, individually or as trustee.

In 1913 the father organized a corporation to which all the vessels and property were transferred, and he took back the shares of the corporation in his own name. Still other corporations were organized and later merged, so that all of the trust assets thereby came to the possession of a corporation known as the Luckenbach Steamship Company, of which the father was the sole substantial stockholder until his death in 1943, and no part of which stock had he registered in his name as trustee.

This manner of handling the property, or this corporate set-up, presents no difficulty in segregation of personal and trust assets, even though the father during these years dealt with all the properties as if they were his own, with the exception that he kept a separate account of the original interest of his uncle, which interest he purchased in 1925. It also appears that he drew large sums of money during the years of the trust for his own personal use or reinvestment, which he had a right to do, so long as the grandfather's widow received her specified income.

When the father died in 1943 his will was admitted to probate and appellant Hupper was appointed executor. He took possession of the stock of the various corporations and has

directed operations. Apparently because of the view that the foregoing situation presented a conflict of interests in one person, the Surrogate appointed a trustee to succeed to the deceased father's trust duties.

In the 1941 accounting the father made a purported segregation of trust property and his personal property. All that need be done by the deceased father's representative is that which the father's estate is required to do — to pay over the principal of the trust. There is no necessary conflict of interests involved. In fact, a new trustee might well take the same position as the father's representative, and the controversy, which concerns the value of the trust remainder, would remain the same with an additional party involved.

The Surrogate's Court Act (§ 168) provides for the appointment of a successor trustee under certain facts, but it does not authorize it when the trust has been fully executed. If the trust here has been fully executed the Surrogate's Court was without power to appoint a successor trustee, even though such appointment would not violate the express terms of the grandfather's will. The sole purpose of the trust was to pay income to the widow and the father for their lives. Both life beneficiaries have died; the purpose of the trust has been fulfilled, and the trust is at an end. The next step is merely to pay over or distribute the principal to the remaindermen. That can be and is ordinarily done by the representative of a deceased trustee where the trust itself is at an end. This was, in substance, held in *Matter of Finck* (103 Misc. 526) per Surrogate FOWLER. The *Finck* case was followed in *Matter of Frech* (220 App. Div. 126, affd. 246 N. Y. 552). In the *Frech* case it was held that cases involving situations where the trust remained unexecuted were inapplicable and, accordingly, as the remaindermen there took upon the death of the life beneficiary, the Surrogate's decree, so far as it appointed a successor trustee, was reversed.

The respondents invoke cases where the appointments of successor trustees were upheld. (*Matter of Thomas,* 254 N. Y. 292; *Matter of Laing,* 59 App. Div. 612, affd. without opinion 170 N. Y. 621; *Farmers' Loan & Trust Co.* v. *Pendleton,* 115 App. Div. 506; *Yates* v. *Thomas,* 35 Misc. 552; *Matter of Harbeck,* 142 Misc. 57 and 556; *Matter of Vernon,* 77 Misc. 425; *Matter of Meehan,* 104 Misc. 219.) In each of these instances, however, there remained some power for the trustee to execute or duty to perform, or the appointment of a successor trustee was expressly directed by the will, or for some other reason not now pertinent the appointment of a successor trustee was necessary.

Recent legislation affecting section 257 of the Surrogate's Court Act fortifies the view that under the facts herein a successor trustee may not be appointed. That legislation shows a trend (a) to simplify the practice in the Surrogate's Court; (b) to reduce the number of fiduciaries dealing with a single fund; and (c) to reduce expenses and commissions of fiduciaries and their successors. Significant amendments have been made to section 257 and other pertinent sections of the Surrogate's Court Act. (L. 1935, ch. 215; L. 1938, ch. 490; L. 1940, ch. 829; L. 1941, ch. 321.) The legislative notes relating to these enactments shed light upon and support the above-stated views respecting the intention of the Legislature in enacting them.

Stripped of all irrelevant considerations, therefore, it appears that the commingling by the father of his interests in the vessels and their operations, with the trust funds, tacitly recognized as permissible or authorized under the grandfather's will, has resulted in a situation where the requirements of the trust as to income have been fully carried out during the lives of the two life beneficiaries, and all that remains is to distribute the principal of the trust estate to the three named remaindermen. The trust, therefore, has fully terminated and distribution can be made as readily by the father's representative as by a successor trustee, especially so because prior to the father's death a segregation of trust property and the trustee's personal property had been set up in an account; and the chief controversy that survived is as to the correctness of the allocation of values.

I conclude, therefore, that under the facts the Surrogate was without power to appoint a successor trustee and that there was no need therefor.

The decree appointing a successor trustee under the last will and testament of Lewis Luckenbach should be reversed on the law, with costs to all parties filing briefs, payable out of the estate, and the motion for such appointment should be denied, without costs.

TAYLOR, J. (dissenting). The trust in question was not "fully executed" within the purview of the Surrogate's Court Act, section 168, when Edgar F. Luckenbach, for many years sole acting trustee, died in 1943, because under the express terms of the trust a trust function remained to be performed under the auspices of a (testamentary trustee) fiduciary, namely "to pay the principal of my [Lewis Luckenbach's] estate to the lawful issue of my said son [Edgar F. Luckenbach] per stirpes and not per capita," according to clause "Seventh"

of the will. From the same clause it appears that this trust function was to be executed by the "Surviving Executor and Trustee," which would have been the Kings County Trust Company when Edgar F. Luckenbach died, except for the resignation of the trust company in 1908. Clearly under these circumstances, which, in my opinion, distinguish the situation here from that presented in each of several authorities upon which the majority relies, a (successor) trustee functioning under the will should "pay over." This trust was not "fully executed." The Surrogate had power to appoint a successor trustee. He exercised sound discretion in doing so.

CLOSE, P. J., CARSWELL and LEWIS, JJ., concur with ADEL, J.; TAYLOR, J., dissents and votes to affirm the decree in memorandum.

Decree of the Kings County Surrogate's Court appointing a successor trustee reversed on the law, with costs to all parties filing briefs, payable out of the estate, and the motion denied, without costs.