JEROME WILE and Others, Suing as Class "A" Stockholders of BURNS BROS., a Corporation, in Behalf of Themselves and All Other Common Stockholders of BURNS BROS. Similarly Situated, and in the Right of BURNS BROS., Appellants, *v.* BURNS BROS., Respondent, Impleaded with LEWIS B. CLOSE and Others, Defendants. (Appeal No. 1.)

First Department, June 20, 1933.

*Leonard B. Zeisler* of counsel [*Herman H. Oppenheimer*, attorney], for the appellants.

*Roger M. Blough* of counsel [*White & Case*, attorneys], for the respondent.

MARTIN, J. Burns Bros., a corporation, brought an action against a number of its officers and directors to recover moneys of which it is alleged they defrauded the corporation.

Thereafter the parties stipulated to refer all the issues to an arbitrator, it being provided that the said arbitrator was empowered to decide the issues on " legal, equitable or practical considerations."

The minority stockholders then sought to be made parties to the Burns Bros. action, but the motion was denied and on appeal to this court the order was affirmed. (*Burns Bros.* v. *Payne*, 238 App. Div. 773; Id. 835.) They then brought an action against the directors of Burns Bros., and in that action sought to enjoin the prosecution of the action entitled " Burns Bros. vs. Payne *et al.*" That motion was also denied. We have herewith dismissed an appeal from such order. (*Wile* v. *Burns Bros.*, *No. 2*, 239 App. Div. 67.) The minority stockholders then brought the present action. A motion was made to dismiss the complaint, which was denied and the order entered thereon was affirmed by this court. (*Wile* v. *Burns Bros.*, 238 App. Div. 838.)

A motion was then made in this action to enjoin the prosecution of the action entitled " Burns Bros. vs. Payne *et al.*" upon two grounds: (1) That the action of Burns Bros. vs. Payne *et al.* is not being prosecuted in good faith, and (2) that the interests of the directors who are attempting to prosecute that action are adverse to the corporation and its stockholders.

The complaint in the present action, after alleging certain preliminary facts, states as follows:

" *Seventh*. That some of the defendants in the Burns Bros. action have been discharged in bankruptcy and that none of them is now able to satisfy any judgment which might be rendered against him in said Burns Bros. action, whereas among the defendants made parties to the Wile action who are not parties to the Burns

Bros. action are men of great means who are able to satisfy any judgment which may be rendered against them in the said action.

" *Eighth.* That one of the issues which is not but which should be raised and determined in the Burns Bros. action, is whether the members of its present board of directors are responsible to said defendant corporation for the misuse of its money, in the manner set forth in the complaints in the Burns Bros. and Wile actions, on the ground that they participated in, authorized, approved or subsequently ratified or acquiesced in such misuse; that in the determination of that issue the members of the present board of directors have an interest adverse to that of the corporation; that therefore the members of the present board of directors of said Burns Bros. are not proper parties to be entrusted with the conduct of any litigation in which that issue is involved as plaintiffs or representing the plaintiff corporation, but should have been made defendants in said action if it were intended to honestly dispose of the issues involved.

" *Ninth.* That defendant corporation herein has entered into an arbitration agreement during October, 1932, with all of the defendants in the Burns Bros. action, except the defendants Farrell and Kalter; that under the terms of that agreement the issues involved in said Burns Bros. action are to be arbitrated and that the defendant Dulles is appointed arbitrator under said agreement. That said agreement provides, among other things, that said arbitrator shall not be confined to legal evidence upon the hearings, before him, *nor in arriving at his conclusions, but may take into account legal, equitable or practical considerations.* * * *.

" *Tenth.* That if an award should be rendered in that arbitration proceeding adverse to the corporation and a judgment should be rendered thereon, such judgment might be set up in the Wile action as a bar to any recovery on behalf of the defendant corporation on any causes of action sued upon in the Burns Bros. action.

" *Eleventh.* Because of the facts hereinabove set forth plaintiffs allege that the aforesaid Burns Bros. action was not brought in good faith and the arbitration agreement above set forth was not entered into in good faith in the interests of the corporation, but collusively, with the intention of procuring a judgment which could be set up as a bar to any recovery in the Wile action, or any similar representative actions brought by other stockholders of Burns Bros. in so far as the causes of action sued upon in the Burns Bros. action were the same as those sued upon in the Wile action."

The allegations of the complaint have been set forth in detail in affidavits, but it is unnecessary to recite these details in referring to the plaintiffs' contentions.

The main contention on this appeal is that four out of eight

directors of Burns Bros., who participated in or knew of the acts alleged in the complaint on which this motion is based and who are responsible for the acts of certain officers and directors during the former management, are not proper persons to conduct the litigation arising out of the matters alleged in Burns Bros. vs. Payne *et al.*, and that the board of directors is unfit to carry on the litigation.

It is argued that since the present directors of Burns Bros. are charged with having participated in the fraudulent acts of which the corporation complains, their interests are identical with those of the former directors and adverse to those of the corporation; that the corporation has the right to be represented in such action by agents who have no interests other than those of the corporation; that when its directors, who are its trustees, have been placed in a position where their interests will or may conflict with their duties as such, they lose their right to act as its representatives; that in the present case they have an adverse interest in the result of the action which they have brought on behalf of the corporation and which they claim the exclusive right to represent; that by their insistence on acting as representatives of the corporation despite that adverse interest, they are depriving the corporation of its right to be represented by disinterested agents who are undivided in their loyalty to the corporation.

The minority stockholders insist upon the right to represent the corporation in the action to bring about restitution and they assert that the only manner in which that right is now available to them is by enjoining the action of Burns Bros. vs. Payne *et al.* as long as it is controlled by the present directors, so long as the appellants diligently and in good faith prosecute the action which they have begun.

The only inference that can be drawn from the allegations of the complaint is that the appellants contend the Burns Bros. action was not brought in good faith, but collusively, and is not being prosecuted in the interest of the corporation. In addition to other grounds the charge of bad faith is based on the fact that none of the defendants in the Burns Bros. action are able to satisfy a judgment which might be rendered against them in that action, whereas among the individuals against whom the Wile action was commenced are men of great wealth who are equally responsible for the acts of the board of directors and equally liable with those who would be unable to pay if a judgment should be obtained against them.

The appellants point out that all the facts upon which their right to an injunction is based are set forth in the complaint herein, in the second Wile action, and argue that this court having already held that that complaint states a good cause of action, the only question now before the court is whether the facts have been cor-

rectly stated in the complaint, and that if they have been correctly stated the appellants' right to relief cannot be seriously disputed. They say they have clearly established that no one occupying a fiduciary relation, such as that of director of a corporation, should place himself in a position where his self-interest will or may conflict with his duties as trustee, and that if he does do so his right to represent his *cestui* ceases at once.

Authority for that proposition is to be found in *Munson* v. *Syracuse, Geneva & Corning R. R. Co.* (103 N. Y. 58), in which the court said: " The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case. It prevents frauds by making them as far as may be impossible, knowing that real motives often elude the most searching inquiry, and it leaves neither to judge nor jury the right to determine upon a consideration of its advantages or disadvantages, whether a contract made under such circumstances shall stand or fall. * * * The value of the rule of equity to which we have adverted, lies to a great extent in its stubbornness and inflexibility. Its rigidity gives it one of its chief uses as a preventive or discouraging influence, because it weakens the temptation to dishonesty or unfair dealing on the part of trustees, by vitiating, without attempt at discrimination, all transactions in which they assume the dual character of principal and representative."

In the recent case of *Wendt* v. *Fischer* (243 N. Y. 439) the general proposition here contended for by the appellants was dealt with in the following language: " If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance. * * * Finally we are told that the brokers acted in good faith, that the terms procured were the best obtainable at the moment, and that the wrong, if any, was unaccompanied by damage. This is no sufficient answer by a trustee forgetful of his duty. The law ' does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case.' (*Munson* v. *Syracuse, etc., R. R. Co., supra,* at p. 74.) * * * Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion."

In Massachusetts the same question has been considered, and in *Quinn* v. *Burton* (195 Mass. 277) the court said: " It is a principle universally recognized, as founded not only on common business morality but on a sound public policy, that persons who act in a representative capacity, whether styled executors, administrators, trustees or agents, are not permitted in the performance of their duties to put themselves in a position antagonistic to the interests of those whom they represent. * * * If, in fact, their principal suffers no harm, or may have been benefited, this inquiry is unimportant, as the object of the law is to secure fidelity in the discharge of fiduciary duties, uninfluenced by considerations which necessarily are corrupt in their tendencies. * * * An agent who places himself in this situation creates the opportunity, and is exposed to the temptation, of taking advantage of his principal. In attempting to serve two masters, the presumption is that he will act for his own mercenary interest, and by assuming a double relation, he becomes disqualified to perform faithfully the services for which he was originally employed, and his conduct is fraudulent."

There appear to be a number of decisions on this subject in other jurisdictions, all to the effect that the directors of a corporation will not be permitted to conduct litigation on behalf of a corporation in which they have an interest adverse to that of the corporation, and in none of the cases does it appear' that the court held that there must be a showing of fraud or collusion on the part of the directors before they are held to be improper parties to conduct such litigation. (*Orlando Orange Groves Co.* v. *Hale*, [Fla.] 144 So. 674; *Sohland* v. *Baker*, [Del.] 141 Atl. 277; *Caldwell* v. *Eubanks*, 326 Mo. 185; 30 S. W. [2d] 976.)

In this State the case of *Sage* v. *Culver* (147 N. Y. 241) appears to sustain the contention of the appellants. There the court said: " When a trustee or the officer or director of a corporation deals with himself as an individual, or in the character of trustee, director or officer of another corporation, with respect to the funds, securities or property of the corporation, the transaction is at least open to question by the corporation, or, in a proper case, by its stockholders, and the trustee is bound to explain the transaction and show that the same was fair and that no undue advantage has been taken by him of his position for his own advantage or the advantage of some other corporation in which he has an interest.

" * * * When it appears that the trustee or officer has violated the moral obligation to refrain from placing himself in relations which ordinarily produce a conflict between self-interest and integrity, there is in equity a presumption against the transaction, which he is required to explain."

(See, also, *Carr* v. *Kimball*, 153 App. Div. 825, 839; affd., 215 N. Y. 634; *Schall* v. *Althaus*, 208 App. Div. 103, 106.)

The question before us for determination is whether an action to bring about restitution should be conducted by the directors of the corporation who are alleged to have participated in the acts complained of, or by the minority stockholders of the corporation who have only the interests of the corporation to serve.

A similar proposition appears to have been passed upon in other States. In *Hall* v. *O'Reilly Realty & Inv. Co.* (306 Mo. 182, 196 [1925]) the court said: " The court ought not, if the allegations are true, to permit the majority of directors to bring and control a suit practically against themselves, even if they would do so, and the trustee will not sue."

(See, also, *Caldwell* v. *Eubanks*, 326 Mo. 185; 30 S. W. [2d] 976; *Duncomb* v. *New York, H. & N. R. R. Co.*, 84 N. Y. 190.)

The appellants contend that the defendants in the Burns Bros. vs. Payne *et al.* action have taken an unfair advantage of their position for their own advantage and that of other corporations in which they are interested; that it has been established on this motion for an injunction that the defendant corporation was at the time of the commencement of the Burns Bros. vs. Payne *et al.* action, and still is controlled by directors whose interest in the result of the Burns Bros. action is adverse to that of the defendant corporation; that, in other words, both the motive for the commission of a fraud and the power to commit it are claimed to have been established. They also say they have shown conduct on the part of the defendant corporation absolutely inconsistent with an intention to prosecute the action in good faith, namely, that before the Burns Bros. action was commenced an investigation was made into the manner in which the affairs of the company had been conducted; that the results of that investigation were discussed at meetings of the board of directors attended by all the directors then on the board; that this investigation showed that the corporation had been defrauded of large sums of money; that one means by which the corporation was defrauded was by the use of corporate funds to pay losses incurred by officers and directors of the corporation through buying stock of the corporation on margin and such funds were used with the knowledge and consent of at least two of the individuals who were at the time of the commencement of this action and still are members of its board of directors.

It is also alleged that notwithstanding the fact that the present board of directors of Burns Bros. had evidence in their possession that some of the acts of the codirectors were illegal, they made no effort to sue these codirectors.

Finally, it is alleged that if there is any doubt about the wrong-doing of the directors and the necessity for action by the minority stockholders, that doubt is fully dispelled after an examination of a part of the testimony taken at the hearings before the arbitrator. The following short excerpt from that testimony seems to dispose of the entire question: " Q. When they said they gave Bache & Company $22,500, did they say from what source it came? A. Of Burns Bros.' funds. Q. Burns Bros.' funds? A. Yes. I said, ' Why tell me now? I have been here every day for ten or twelve days, and nobody has mentioned this before.' And then they told me that Mr. Bache had called for an additional sum for margin — either another $25,000 for margin, or that the account be taken up in full, which would require, as I remember it, about $50,000. * * * Then I asked them why they had given this $22,500 to Bache from the corporate funds to protect the speculative account of an officer and director; and they said, ' Well, it was really more than that; we gave $47,000 before, so it is really about $70,000 ' — also from the corporate funds; and I said then, ' I understand that you want me to put up more of the company's money for this same purpose on this same account? ' and they said, ' Yes.' They were all very urgent that I should do that, but I refused. Then they all told me that I did not understand the rules of New York finance, and that that was the customary thing for large corporations to do — to put up money out of the company's treasury to protect the speculative accounts of its officers and directors. ' Well,' I said, ' I may not know the rules here, but when you put something under my nose that stinks, I recognize the odor, and I won't do it.' "

In *Pike* v. *Mechanics & Traders' Bank* (81 Hun, 78) the court held that it had the power to restrain the trial of another action in the same court until the final disposition of the action in which injunction was granted, if justice demanded it. To the same effect is *Schmidt* v. *Schwartz Bldg. & Const. Co., Inc.* (232 App. Div. 549); *Weber* v. *Climax Molybdenum Co.* (127 Misc. 470; affd., 217 App. Div. 756). We are of the opinion that the appellants are entitled to an injunction against the further prosecution of the case of Burns Bros. vs. Payne *et al.*

The appellants having presented a case requiring injunctive relief, the order should be reversed, with twenty dollars costs and disbursements, and the motion granted.

FINCH, P. J., MERRELL and TOWNLEY, JJ., concur; McAVOY, J., taking no part.

Order entered December 5, 1932, reversed, with twenty dollars costs and disbursements, and motion granted. Settle order on notice.