In the Matter of the Estate of EDWIN H. PECK, Deceased.

Surrogate's Court, Westchester County, June 20, 1934.

*Joseph O. M. Van Tassel* [*Strang & Taylor* of counsel], for the trustee.

*Smith, Chambers & Clare* [*Frank W. Chambers, James L. Clare* and *Robert P. Smith* of counsel], for the objectors.

SLATER, S. The decedent's will was admitted to probate on January 9, 1929. Three individuals and the Mount Vernon Trust Company were named as executors to serve without bond. Two individuals and the trust company were named as trustees. Practically the entire estate was given to the executors in trust for the widow, upon her death to be distributed between her two children. The four executors qualified, but the widow-executrix was permitted to resign by order of this court dated February 13, 1929.

On March 27, 1931, there was recorded in the office of the surrogate of Westchester county, in liber 14 of Releases and Discharges of Executors and Administrators, at page 527, an instrument in which the widow, her two children and the two individual executors joined, wherein a judicial accounting was waived and the said three executors were discharged from every claim and liability, and consent was given to transfer the balance of $277,843.99 to the Mount Vernon Trust Company as sole trustee upon its qualifying as such trustee. On April 24, 1931, letters of trusteeship were issued to the Mount Vernon Trust Company as sole qualifying trustee under the will.

The will is broad in its authority to the trustees to act. It gives them the right to exchange, lease, build on, improve, repair, mortgage or in any manner incumber any or all of the real estate upon such terms and in such manner as they shall deem best. It authorizes the trustees to carry on the business in which the decedent was engaged at the time of his death. It further authorizes the executors and trustees " to retain, invest and continue to keep invested my estate or any portion thereof, or the principal of the trust created by this my Will, in the securities or in the manner in which it may exist or be invested at the time of my decease, or to sell the same and invest the proceeds thereof otherwise, and my said executors and trustees are also hereby authorized and empowered in their discretion, to invest, reinvest, change, alter or vary investments, at any time, in any securities and investments, which to them may

seem advisable and proper; and my said executors and trustees in making such investments or in altering, changing or varying the same, shall not be limited to such as trustees are by law authorized to make but may make whatever investments in real and personal property as shall, in the exercise of their untrammeled discretion, seem to them judicious."

The instant accounting proceeding started through a petition to compel an accounting. The Mount Vernon Trust Company as sole trustee filed its account February 13, 1934, together with a petition asking for a judicial settlement. Objections to the account were filed by the life beneficiary and the remaindermen on March 20, 1934. The first and second objections relate to the investment in two mortgages on real property. These two mortgages were purchased by the three executors from the Mount Vernon Trust Company. The third objection relates to the sale of the decedent's business and the fourth objection relates to the ownership of the decedent's seat on the New York Coffee Exchange. The third and fourth objections will not be considered in this opinion because the court has not been presented with evidence with regard to them. The fifth, sixth, seventh, eighth, ninth and tenth objections allege that the trustee purchased said mortgages from itself and further that the said mortgages were not, at the time of purchase, worth the face or stated value thereof. The objectants seek a surcharge of the trustee by reason thereof.

The court will consider in this opinion only the question relating to the six mortgages which the trustee purchased from itself. These mortgages are set out in objections five, six, seven, eight, nine and ten and amount to $52,800. They were purchased between June 23, 1930, and February 2, 1933. It has been stipulated by counsel that the testimony by the trust officer of the trustee, given on April 10, 1934, in the examination before trial, may be considered as testimony with regard to these mortgages as though it had been given before me upon the hearing on the objections.

It is not denied that these several mortgages were purchased by the trustee from itself. There are no charges of fraud or implications directed at the trustee. The primary objection is that it purchased from itself and the secondary question relates to the value of the mortgages at the time of such purchase.

It has long been settled, and upon principles which cannot be controverted, that a trustee cannot deal in its own behalf with the funds intrusted to his charge for the benefit of another. He can neither purchase the trust funds for himself, nor exchange them for his own property. This principle of law, long since become public policy, is found in the decisions of the earliest English courts

and has come down through the years to us. (*Ackerman* v. *Emott*, [1848] 4 Barb. 626, 649.). As to whether there has been a change in subdivision 7 of section 188 of the Banking Law, effective April 21, 1933, by chapter 323 of the Laws of 1933, see *Matter of Flint* (240 App. Div. 217, 225, Feb. 1934).

What the life beneficiary and the remaindermen demand and what they are entitled to, if they are not estopped by their release, is that these mortgages shall be adjudged to belong to the trustee and that the trust fund shall be made good with interest, less any income which may have been paid to the life beneficiary. Transactions of this character have been declared to be " counter to public policy." Trustees cannot be permitted to deal with trust funds in the dual capacity of buyer and seller. (*Matter of L. I. L. & T. Co.* [*In re Garretson*], 92 App. Div. 1 [Second Dept. 1904]; affd., 179 N. Y. 520; *Smith* v. *Howlett*, 29 App. Div. 182 [1898].)

In *Carrier* v. *Carrier* (226 N. Y. 114, 125 [1919]) it appears that the creator of a trust had reserved to himself the broadest right of management. His discretion was to be absolute and uncontrolled, but the court said: " He had made himself a trustee; and in so doing he had subjected himself to those obligations of fidelity and diligence that attach to the office of trustee. He had power to ' invest ' the moneys committed to his care. He had no power, under cover of an investment, to loan them to himself. His discretion, however broad, did not relieve him from obedience to the great principles of equity which are the life of every trust." (*Globe Woolen Co.* v. *Utica G. & El. Co.*, 224 N. Y. 483; *Munson* v. *Syracuse, G. & C. R. R. Co.*, 103 id. 58.) This principle has recently been restated by Surrogate WINGATE in *Matter of Harbeck* (142 Misc. 57 [1931]).

Mr. Justice GEORGE H. TAYLOR in *Matter of Westchester Title & Trust Co.* (Westchester L. J. Dec. 27, 1933, p. 1325) said: " There is a well-established equitable principle which properly precludes a trustee from investing trust funds in securities which are the individual property of the trustee. Such investment, regardless of any statute, is counter to public policy." He said that the principle asserted is firmly established in our equitable jurisprudence and for that reason perhaps, a statement of it persists in the Personal Property Law, section 21, and the Decedent Estate Law, section 111.

" Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion." (*Wendt* v. *Fischer*, 243 N. Y. 439, 444.) " Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd." (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464.)

In Massachusetts this principle of public policy is universally recognized as founded not only on common business morality but

on a sound public policy. (*Quinn* v. *Burton*, 195 Mass. 277; *Wile* v. *Burns Bros.*, 239 App. Div. 59, 63, 64.)

In *Matter of Flint* (240 App. Div. 217, 221), February, 1934, Second Department, the court referred to these principles with approval.

These principles have been referred to by the courts in another way by saying that agents are bound at all times to exercise the utmost good faith towards their principals. They must act in accordance with the highest and truest principles of morality. It is a question of loyalty and fair dealing. (*Elco Shoe Manufacturers* v. *Sisk*, 260 N. Y. 100.) This public policy so fully and properly recognized by decisions is also expressed by statute.

The provisions of the will, liberal as they are and even if more so, could not overcome the public policy of the State upon the subject that a trustee cannot deal with itself.

No evidence has been presented indicating that the facts regarding the purchase of these mortgages were brought to the attention of the interested parties at the time of the execution of the release and discharge heretofore referred to. Without such knowledge, the release must be disregarded and hence the parties are not estopped from asserting their rights by reason thereof. (*Adair* v. *Brimmer*, 74 N. Y. 539, 544; *Matter of L. I. L. & T. Co.* [*In re Garretson*], *supra; Smith* v. *Howlett, supra; Matter of Rennert*, 115 Misc. 762; *Bruff* v. *Rochester Trust & Safe Deposit Co.*, 125 id. 579, 584.)

The bonds and mortgages referred to in objections five, six, seven, eight, nine and ten, purchased by the trustee from itself, are held to be the property of the trustee and the trustee is surcharged in the sum of $52,800, with interest from the date of their purchase by the trustee, less the income therefrom which has been paid to the life beneficiary. In view of the court's ruling, it will be needless to proceed with the objection relating to the value of the mortgages at the time of their purchase.

Submit decree on two days' notice in accordance with this decision.