In the Matter of the Estate of GEORGE M. TUTTLE, Deceased.

Surrogate's Court, New York County, February 9, 1937.

*Milbank, Tweed, Hope & Webb* [*W. H. L. Edwards, Richard S. Holmes* and *Harold P. Winans* of counsel], for the Title Guarantee and Trust Company, trustee.

*Dixon & Holmes* [*Frederick J. Moses* and *Thomas M. Healy* of counsel], for Mabel C. Tuttle and Natalie C. Tuttle, objectants.

DELEHANTY, S. Exceptions to the reports of the referee and motions to confirm such reports are before the court for decision.

Deceased died in 1912. Under the terms of his will and codicil two trusts of $50,000 each were created for the benefit respectively of his wife and his daughter during life. In each instance the beneficiary is given the power to appoint the remainder of the trust and in default of the exercise of the power it is provided that the remainder shall pass as the intestate property of the beneficiary.

The seventh paragraph of the codicil provides:

" *Seventh.* I give to said trustee power to sell any securities which at any time form part of the said trust estates, and direct that so far as possible my executors assign and pay over to said trustee, in the establishment of the said two trust funds, long time railroad bonds if such there be in my estate at the time of my death, and it is my preference that said trust funds be kept invested in said securities unless for good and sufficient reasons said trustee should deem it advisable to make changes of investment, and I authorize said trustee to accept such securities and hold the same for the benefit of said trust estates."

The trusts were set up in 1913. As originally constituted the corpus of each trust consisted for the most part of long term railroad bonds previously owned by the testator.

The testator's widow and daughter went to Europe in 1921. The record discloses that a Mr. Kirkbride, who was one of the executors named in the will and who is a brother-in-law of the widow through a former marriage, actively represented the widow as her agent or attorney-in-fact in all dealings with the trustee. The record also discloses that in 1926, or sometime prior thereto, the testator's widow was dissatisfied with the amount of income she was receiving and that she sought an increase of income by a change in the investments held by the trustee. At her request the railroad bonds then on hand were sold and the proceeds were invested in mortgages and mortgage participation certificates bearing a higher interest rate than the bonds had carried. Some such investments had previously been made on the redemption at maturity of some of the railroad bonds. Eventually, by reinvestments, the entire corpus of both trusts was invested in mortgages and in certificates of participation in mortgages.

As a result of the widespread deflation of values following the stock market crash in 1929 the trusts greatly depreciated in principal value and there is a substantial diminution of income to the trust beneficiaries. This situation precipitated the present bitterly contested litigation. Numerous objections similar in form were filed by the widow and by the daughter of the testator which put in question practically every investment made by the trustee. In general they asserted negligence and dishonesty and breach of the terms of the will. The alleged misconduct of the trustee is said to have begun with the sale of the railroad bonds and the reinvestment of the proceeds in mortgages and participation certificates.

It is charged that the trustee in making reinvestments purchased several whole mortgages from itself or from an allied corporation asserted to be identical in law with the trustee. It is contended by objectants that transactions of this sort are illegal and that the trustee must restore the amount of such investments with interest at six per cent. This contention squarely raises the issue of the right of a corporate fiduciary to purchase a whole mortgage from itself for a trust investment. Prior to the 1936 amendment (Laws of 1936, chap. 898) to section 188, subdivision 7, of the Banking Law, that statute permitted a corporate fiduciary to purchase from itself for a trust investment parts or shares in bonds and mortgages. Section 188 of the Banking Law relates only to corporate fiduciaries and is independent of section 21 of the Personal Property Law and of section 111 of the Decedent Estate Law. By the Banking Law corporate trustees were permitted to depart from the common-law rule that a trustee may not deal with himself. The general

rule of undivided loyalty is still the rule declared in section 21 of the Personal Property Law and section 111 of the Decedent Estate Law and that rule governs fiduciaries generally. In enacting the amendment to section 188 of the Banking Law which in 1917 first permitted such purchases of parts or shares of mortgages the Legislature must have intended in the case of corporate fiduciaries to abrogate in some measure the common-law rule and to exempt such fiduciaries from the cited provisions of the Personal Property Law and of the Decedent Estate Law forbidding trustees to purchase investments from themselves. Because the words of the statute speak only of parts or shares of bonds and mortgages, objectants contend that the purchase of a whole mortgage by a corporate fiduciary from itself is not permissible. Their contention is based wholly on a strict construction of the statutory language. The trustee urges the absurdity of a statutory construction which would permit a corporate fiduciary to purchase from itself ninety-nine per cent of the amount of a mortgage but which would not permit the purchase of a whole mortgage.

In *Matter of Flint* (240 App. Div. 217) the Appellate Division of the Second Department, in speaking of the phrase, " No trustee shall purchase securities hereunder from himself," used in both the Personal Property Law and the Decedent Estate Law, stated (at p. 225):

" The prohibition, therefore, in the two other statutes does not apply to a corporate trustee who does not act *under* them but acts under the Banking Law. It applies only to an individual trustee who necessarily acts under the Personal Property Law and the Decedent Estate Law and is subject to this clause forbidding him to purchase securities ' hereunder ' from himself, and is in harmony with the general doctrine.

" The wisdom of applying a different rule in respect of legal investments, as between a corporate trustee and an individual trustee, is a matter for the Legislature." (Italics in original.)

This language was thought to indicate that the court considered that the common-law rule prohibiting a trustee from dealing with himself was inapplicable to a corporate fiduciary in making mortgage investments. However, this same court in *Matter of Balfe* (245 App. Div. 22) construed the statute strictly in a case involving purchase of whole mortgages. In the *Balfe* case the court was considering the affairs of two estates, the accounting proceedings in which had been tried together. The court held unanimously that the text of the will of one deceased justified the purchase by the trustee from itself of whole mortgages but the court divided on the

question whether the powers granted in the will of the other were broad enough to dispense the trustee from liability for such purchases. In the discussion of the question under this will the prevailing opinion said: " The purchase of mortgages from itself, *otherwise illegal*, became lawful perforce the provisions in the will, *making inapplicable the case law and statutory safeguards*, because they were bought in good faith." (Italics supplied.) The dissenters, speaking of the whole mortgages purchased from itself by the trustee in this same estate, said: " As to the $26,000 in *mortgages bought from itself*, there should be no surcharge for those bought in the Thomas F. Balfe estate.   *   *   *   But as to those bought for the Mary A. Balfe estate, *the trustee should be surcharged* with the same,   *   *   *.   *We hold that these mortgages do not come within the provisions of subdivision 7 of section 188 of the Banking Law.*" (Italics supplied.)   The comments in the respective opinions are not to be deemed inadvertent because the objections specifically raised the question of validity of the purchase of whole mortgages and each brief filed on the appeal had in it a separate point dealing with this precise issue.   Objectants in their brief cited *Wendt* v. *Fisher* (243 N. Y. 439); *Meinhard* v. *Salmon* (249 id. 458) and *Matter of Peck* (152 Misc. 315).   The case last cited held a purchase by a trustee from itself of a whole mortgage to be in violation of the statute.   The surrogate who took the *Balfe* accountings had cited in his opinion (152 Misc. 739, 755) a number of authorities dealing with the disability of a trustee to deal with itself.   This opinion of the surrogate was of course before the appellate court. The trustee on the *Balfe* appeal relied upon the opinion of the same court in *Matter of Flint* (*supra*) and urged that the legality of whole mortgage purchases had been established inferentially by that case. On this state of the record it would seem that the later decision of the Appellate Division in the Second Department has held inapplicable to whole mortgage purchases its dictum in *Matter of Flint* (*supra*).

The Appellate Division of the Fourth Department likewise held in *Matter of Roche* (245 App. Div. 192) that a corporate trustee is prohibited from purchasing whole mortgages from itself.   The record on appeal in that case shows that the accounting fiduciary offered in its brief to take over the whole mortgages without further controversy about them.   It really litigated in the appellate court only the question whether the notice respecting investment in participations was adequate.   The Appellate Division could have contented itself with saying that it would not pass on the law question respecting whole mortgages because the issue had become

moot by reason of the offer of the fiduciary. The court did not so dispose of the matter. It said (at p. 193): " *The trustee has purchased from itself in behalf of the estate certain entire bonds and mortgages* and has also invested trust funds in mortgage participations without giving the statutory notice. *These transactions fall within the condemnation of the statutes quoted.*" (Italics supplied.)

The amendment made in 1917 to section 188 of the Banking Law was in derogation of the rule of the common law governing fiduciaries. It is familiar practice to construe strictly statutes so in derogation of common-law rules. There is a rule of equal vigor that the legislative intent must be ascertained and effectuated so far as it is expressed in the statute. In the interpretation of a statute there is the rule that it must be given a reasonable construction. There can be no doubt that the amendment of 1917 authorized corporate trustees to deal with themselves. The court has a good deal of sympathy with the viewpoint of the referee, himself a legislator, when he says that it would be unreasonable to suppose that the Legislature granted permission to a fiduciary to purchase fractions for individual trusts to the extent of the whole mortgage but forbade the purchase of the whole mortgage for a single trust. His view that there is neither practical nor logical reason for such construction would be entitled to great weight if it were not for these appellate decisions on which comment has been made. While the question has not been concluded in this department any difference of viewpoint from that expressed by the Second and Fourth Departments ought to come from the appellate court and not from a trial judge.

The foregoing discussion proceeds upon the assumption that the record shows that mortgages were purchased by the trustee directly from itself. That is not the exact situation. The proof shows that the trustee made loans of its own funds and that it took mortgages in its own name as security for the loans so made. These mortgages were held by the trustee for shorter or longer periods, as the case might be, and on the occasion when the funds of the trust were to be invested in the mortgages they were assigned to the Bond and Mortgage Guarantee Company and by the latter company reassigned on the same day to the trustee in its trust capacity. Two contentions are advanced respecting this procedure. The trustee asserts that it renders wholly inapplicable the prohibition against a trustee dealing with itself because on the record the purchase was from the Bond and Mortgage Guarantee Company whose guaranty was obtained thereby. Objectants say that this form of procedure was fraudulent and they say further that Bond

and Mortgage Guarantee Company and the trustee are one and hence that the assignment and reassignment had no effect upon the rule against this fiduciary purchasing from itself. Considerable testimony was given by objectants in support of the contention that the two corporations are identical. The court holds on this record that identity of corporate existence has not been established. The court holds, too, that so far as this record shows there was no purpose to defraud involved in the assignment and reassignment of the mortgage. The court finds nothing in this record to support the attack made by objectants upon the personal motives of the trustee's officers. However, the court holds that the statutory bar to the transaction is applicable despite the medium through which the mortgage investment reached the trust fund. The statutory rule, if it have any validity, must be sufficiently strict and sufficiently comprehensive to reach a dealing by the trustee with trust funds through the method here shown to have been employed. Though the method employed was used with no unworthy purpose and though a guaranty of payment resulted therefrom still the operations of these two companies were so allied as to make the intervention of the Bond and Mortgage Guarantee Company without efficacy in avoidance of the statutory bar. This trustee was in the business of lending money on mortgages. When it had invested its capital and surplus of course it must needs end its investment program until some of its investments came due unless it could find a medium for disposing of the investments on hand and thereby re-establishing a cash fund available for further mortgage investments. This it did in part by direct sales to others and in part by assignments to Bond and Mortgage Guarantee Company and reassignments by the latter to trust funds held by the trustee. In practical effect the last stated transactions moved trust funds in the trustee's hands into the general funds of the trustee. The business of the trustee was such that its profits were derived in very large degree from its lending operations. The lending operations, as stated, could continue only as long as mortgages acquired could be disposed of and new funds obtained. At least in the case of this trustee the process of continuous lending, of investment in mortgages, of sale of mortgages, of reconstitution thereby of loan funds and of reinvestment was so continuous and was so bound up with the operations of the Bond and Mortgage Guarantee Company that the statutory bar must be held to be applicable.

In the case of the so-called Boyd and Walton mortgages separate comment is necessary. The Boyd mortgage was made directly

to Bond and Mortgage Guarantee Company. The Walton mortgage was made to one Annie Mattes. She in turn assigned it to Bond and Mortgage Guarantee Company which gave her its check for the full amount of the mortgage principal. She in turn took the check of Bond and Mortgage Guarantee Company and with it purchased from this trustee in its private corporate capacity certificates in bonds and mortgages on other property. In respect of these two mortgages it is asserted that the identity of the corporate structures requires a ruling that the trustee was purchasing from itself. That ruling the court declines to make. In each of these instances there was an actual *bona fide* ownership of the mortgage by Bond and Mortgage Guarantee Company through investment of its own funds. The acquisition of such mortgages was not a violation of the rule against a trustee dealing with itself.

The effect of these rulings is that the investments now on hand in whole mortgages in the trust for Natalie Tuttle must be replaced in the case of the so-called Skinner and the so-called Burke mortgages but in no other. As respects the investments in the trust for Mabel C. Tuttle the so-called Draye mortgage must be substituted by cash but no other substitution is necessary in that trust.

These rulings requiring a replacement of principal will require a readjustment of interest. The court declines to charge the trustee with six per cent interest from the inception of the investment. It finds no such malicious misuse of the trust funds as would require a penalty of six per cent. As matter of fact the amount actually realized by the income beneficiaries on these investments up to the time of default was at least equal to if it did not exceed the amount which was the average rate of earning on trust funds during the same period. Proper protection to the interests of the income beneficiaries will be given if from the date of last full interest payment there is credited to the beneficiaries a net return (assuming all commissions are paid) of four and one-half per cent on the principal sum invested in the mortgages with which the trustee is charged. Against the interest so computed there will be allowed as a credit the actual income on such investments actually paid over to the income beneficiaries. If the income actually paid over is not equal to the rate here fixed the difference is held to be presently payable. The decrees will hold the trustee to have in its hands cash in lieu of the mortgage investments themselves. Upon the replacement in the account of such cash and the making of the income payment here directed the mortgage investment in each case with all accrued and unpaid interest will be assignable by the trustee to itself in its private corporate capacity.

It has already been stated that the ordinary charges antecedent the investment by the trustee in its private capacity of its own private funds are not a subject of surcharge. Various criticisms concerning the management of the trust relate to mortgage investments of the sort which are now found in the trust. As to whole mortgages purchased from the trustee itself the same criticism could be made as is here made of those whole mortgages which are in the trust to-day but it is needless to discuss those purchases since they eventually were liquidated at par so far as the trust operations are concerned and since the court has ruled that the income earned up to default is all that the income beneficiaries are entitled to have. It is asserted by objectants that the trustee obtained an illegal profit of $685 during the administration of the trust. This amount appears to have been arrived at by totaling all charges to the borrowers for searches, for the drawing of papers and for the fees for extensions of mortgages which came due during the trust administration. Nothing is shown to indicate that the charge for searches and for drawing papers produced any profit to the trustee for which it should be charged. It rendered these services to the borrower and necessarily incurred some expense in the service. The items called " fees for extensions " seem to be in a different category. On four of the mortgages fees totaling $57.50 appear to have been received by the trustee without any showing of any equivalent expense to the trustee and as to that sum the objections are sustained since the service was included in the commissions as trustee and should not have been compensated additionally. There was a somewhat similar fee collected by the trustee in connection with a certificated mortgage but the interest of this trust in that whole mortgage is so trifling that the amount received is negligible so far as the participation of this trust is concerned. It will accordingly be disregarded.

Objection is made to all of the investments whether in whole mortgages or in participations on the ground that the trustee was making a profit at the expense of the trust estate. The fact argument of objectants is that since the trustee was in the business of insuring titles and making mortgage loans in which it charged loan fees it must be held to have profited at the expense of the trust estate whenever it put into the trust estate an interest in a mortgage on which at the time the mortgage was originally made it had collected either a loan fee or a title insurance fee. The court holds that these contentions are unsound. When the trustee loaned its own money it may be supposed that in normal course the borrower was required to pay a fee for the search of the title and was required

to pay what the trustee in its commercial operations calls a loan fee. It may be assumed that out of the fee charged for title examination and the so-called loan fee the trustee made a commercial gross profit. It is supposed as well that in the operations of the company it was required to incur expense for the doing of its work and so these fees are not all profit. But it may be assumed that there was a residue of net profit which constituted the bulk of the net corporate income of the trustee. The record shows large profits in the department which handled these loans. Granting all of that it still remains the case that when the original commercial transaction was completed between the borrower and the mortgagee which was at that point engaged in lending its own funds there resulted a bond and mortgage which was the private asset of the corporation which is here the accounting trustee and was part of its general corporate assets. It was not the trust fund which was used in acquiring the asset but the general funds of the corporation. If that bond and mortgage was adequate to meet the tests of the law regulating mortgage investments by trustees it was available for investment of trust funds notwithstanding that a profit had been made in the original acquisition of the mortgage. The beneficiaries in such circumstances are entitled to inquire into whether the mortgage was prudently acquired by the trust fund, whether the underlying security was sound, whether the statutory proportion between loan and actual value of the security existed at the time of the acquisition by the trust. They could go into any question respecting the nature of the building on the property and any other item which would bear upon the good faith and good judgment of the investment but they are not entitled to assert invalidity merely for the reasons stated in this branch of their objections. It would be of importance to objectants to inquire whether in its seeking profits in the loaning of its own capital funds the trustee had procured mortgages proper for investment of trust funds. Rigid scrutiny of mortgages in the trust might be required to see whether the temptation to make profits in the lending of moneys had resulted in a bad mortgage. But those questions need not be pursued because this record does not support an attack based on lack of value in the underlying security at the time the mortgages were originally made. The chief attack is made upon the right to buy the mortgages at all and is based upon the theory that profits were secretly made by the trustee in relation to them in their creation and realized on the sale to the trust. This attack must fail.

The trustee contends that both the testator's widow and his daughter are estopped from urging any of the objections here made

because their agent acquiesced in the investments and the reinvestments made by the trustee. There is no doubt that Mr. Kirkbride was the agent of the widow. She could not have made him the agent of her ward and he did not represent the daughter of the testator during her infancy. The release executed by the former infant upon her attaining majority is not a general release. Neither can it be construed as ratification of the acts of the trustee during the infancy of this objectant. The release discharges the trustee from any criticism respecting the payment of trust income to the general guardian of the infant during her infancy. It goes no further. It does not ratify the transactions in capital account. Ratification to be effective must be made after disclosure or full knowledge of the acts to be ratified or the defaults to be excused. The record shows that the daughter of the testator had no knowledge at the time the release was executed of any of the acts of the trustee in relation to these investments. The widow is not wholly so situated. At least to the extent of authorizing the sale of the railroad bonds and the investment of the proceeds in mortgages the widow of the testator is bound. She, however, is not shown to have had, nor has her agent been shown to have had, any knowledge of the underlying facts which bring into operation the bar of the statute against a trustee dealing with himself. In the daughter's trust fund the capital is comprised in part of two mortgages which by this determination the court holds were improperly put into that fund. In the widow's fund there is one mortgage of $6,000 face value which must be replaced. The court finds nothing in this record of that full disclosure by the trustee of its departure from the statutory rule which alone would bind the objecting widow of deceased to the purchase of this whole mortgage. It is not necessary to consider whether there is a public policy involved which would make ineffective even a waiver with full knowledge. Probably the policy of the statute does not go so far.

As to both the widow and the daughter of deceased, it is inescapable that their complaints now made are based not on the sale of the railroad bonds and the reinvestment in mortgages but on the fact that the latter investments have turned out to be a disappointment. The will of deceased expressed a preference for the continuance in the trust of the railroad bonds. It did not constrain such continuance. The trustee was still at liberty to exercise its judgment on the subject. In that exercise of judgment the trustee could legitimately have taken into account the wishes of the adult beneficiary and could have taken into account, too, her wishes expressed in behalf of her daughter. There is no doubt

that the mortgage investments produced a higher rate of return and there is no doubt that up to the collapse in realty values which followed the stock market crash there was a feeling of complete security in the stability of this type of investment. The court is satisfied on the record that the trustee acted in good faith and for proper motives in the sale of the railroad bonds and hence holds that such sale of bonds is not a basis for surcharge even in favor of the daughter of deceased.

No specific rulings are made in respect of each numbered exception to the referee's report for the reason that objectants have undertaken to set up the commentary in the report of the referee as if such commentary constituted separate findings and then objectants have filed exceptions thereto. That is not a permissible method of procedure. Findings and conclusions are not necessary in the surrogate's practice (Surr. Ct. Act, § 71). The referee made none. The so-called exceptions to such findings and conclusions, therefore, require no separate treatment. The exceptions are dealt with as raising issues respecting the correctness of the conclusions reached by the referee generally. The court differs with the referee only in the particulars stated and for the reasons stated in this opinion: To the extent of that difference the exceptions are sustained and the decrees to be entered will so provide.

After the close of the argument before the court on the referee's report the objectants asked leave to submit additional testimony and to reopen the proceedings for that purpose. By stipulation additional matter was received and the conclusion here reached is based on the whole record, including the proceedings before the referee and such additional material.

The court finds no reason for denying commissions to the trustee.

The court finds no reason for removal of the trustee.

Submit, on notice, decree sustaining to the extent hereinabove stated the exceptions to the referee's reports and otherwise confirming such reports and settling the accounts of the trustee in conformity with this decision.